Your Name:     Brett Wagers

Address:          1026 77th St. E. Ely, Nevada 89301

Phone Number:  702-335-2642

Fax Number:     N/A

E-mail Address:  brett.wagers@gmail.com

Pro Se Plaintiff

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

Case Number: _____

| | |
|---|---|
| Brett Wagers | |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Robinson Nevada Mining Company | |
| & | **DEMAND FOR JURY TRIAL** |
| Mark Beres II | Yes ☑   No ☐ |
| & | |
| John Haynes | |
| Defendant. | |

**JURISDICTION**

[*Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.*]

1.  My case belongs in federal court

☑  under <u>federal question jurisdiction</u> because it is involves a federal law or right.

[*Which federal law or right is involved?*]  <u>Americans with Disabilities Act (ADA) & Civil</u>

<u>Rights Act of 1964, Title VII (Retaliation and Discrimination (Male))</u>

☐  under <u>diversity jurisdiction</u> because <u>none of the</u> plaintiffs live in the same state as any of the

defendants <u>and</u> the amount of damages is more than $75,000.                              .

**VENUE**

Page <u>1</u> of <u>23</u>

[*Nevada is one "judicial district." Check the box for each venue option that applies.*]

2. Venue is appropriate in this Court because:

☑ a substantial part of the events I am suing about happened in this district.

☐ a substantial part of the property I am suing about is located in this district.

☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity <u>and</u> I live in this district.

☐ at least one defendant is located in this District and any other defendants are located in California.

**INTRADISTRICT ASSIGNMENT**

[*This District has two unofficial divisions. One is the "Northern Division" covering northern Nevada including Carson City, Churchill, Douglas, Elko, Eureka, Humboldt, Lander, Lyon, Mineral, Pershing, Storey, Washoe and Whitepine counties at the courthouse in Reno. One is the "Southern Division" covering southern Nevada including Clark, Esmeralda, Lincoln, and Nye counties at the courthouse in Las Vegas.*]

3. Because this lawsuit arose in ____White Pine____ County, it should be assigned to the ____Northern____ Division of this Court.

**PARTIES**

4. Plaintiff. [*Write your name, address, and phone number. Add a page for additional*

Name: ____Brett Wagers____

Address: ____1026 77th St. E., Ely, Nevada 89301____

Telephone: ____702-335-2642____

5. Defendants. [*Write each defendant's full name, address, and phone number.*]

Defendant 1:

Name: ____Robinson Nevada Mining Company____

Address: ____4232 W. White Pine County Road 44A, Ruth, Nevada, 89319____

Telephone: ____775-289-7000____

Defendant 2:

Name: Mark Beres II

Address: White Pine County, Nevada

Telephone:

Defendant 3:

Name: John Haynes

Address: Maricopa County, Arizona

Telephone:

**STATEMENT OF FACTS**

[*Write a short and simple description of the facts of your case. Include basic details such as* _where_ *the events happened,* _when_ *things happened and* _who_ *was involved. Put each fact into a separate, numbered paragraph, starting with paragraph number 6. Use more pages as needed.*]

**6.Introduction:** Plaintiff, Brett Wagers, is a resident of Ely, Nevada. I worked for Robinson Nevada Mining Company from January, 2011 - July 27th, 2023. Prior to adverse employment actions, I was a Senior Geologist w/ leadership responsibilities. My sex is Male. My responsibilities were pivotal for the profitability of the mine. During the events summarized below, Amanda Hilton was the General Manager of the mine.

**7.Incidents of Harassment:** From approximately February 2020 to my termination date on July 27, 2023, I was on the receiving end of pervasive harassment due to my sex from several women co-workers at work. I will briefly summarize the significant incidents.

a. February, 2020 - Discovered co-worker, Emily Willard, was telling others at work that my platonic relationship with a female co-worker was, "inappropriate and unprofessional." I was not her direct supervisor nor was our relationship intimate. Reported verbally to Jaime Cogley, Tech Services Manager, no disciplinary action was taken.

b. March, 2020 - Discovered disparaging note in my laptop that read, "Sayonara Poopy Mcpoopface." My office door was locked preventing movers from moving my furniture to the new building. My office was the only one that wasn't moved. Reported harassment to Kami Williams, HR rep, via email. No action taken.

c.  March, 2020 - May, 2020 - I was on the receiving end of pervasive harassment from Melissa Jetson and Emily Willard. The behavior created a hostile work environment and caused the development of a disability protected under the ADA. Emailed complaint to Jaime Cogley on May 5, 2020. No investigation or disciplinary action was taken.

d.  May, 2020 - January 1, 2021 - Pervasive harassment continued and two incidents of workplace violence occurred. Both instances occurred when Melissa Jetson yelled in my face and used threatening mannerisms in response to what was cordial conversation. One incident occurred when discussing my relationship with Kayla, she yelled, "You violated the HR handbook, look it up." Workplace violence wasn't reported till much later due to prior inaction of management and HR. Melissa Jetson was moved to a different department starting in January 1, 2021.

e.  March 26, 2021 - Melissa Jetson created a power point presentation detailing the stripping of responsibilities from myself to her. The presentation attacked my expertise and competence. Once complete,  the document was distributed to management and approved without my knowledge.

f.  September, 2021 - I became aware of another presentation that accused me of not communicating well enough. Again, the document was distributed to management without my knowledge.

g.  October, 2021- An anonymous complaint was made accusing me of discriminating against women. Management did not disclose the complaint to me and it wasn't revealed to me until June 27, 2023. I was forcefully reassigned and stripped of leadership responsibilities during the time the complaint was submitted.

h.  July 18, 2023 - Heather Gloeckner, part of the management team,  accused me of threatening behavior, ambushing her, and yelling inappropriately. The opposite was true. She threatened me if I reported behavior to HR and I quieted my voice to continue the conversation when she accused me of yelling.

**8. Adverse Employment Actions:** The following are adverse employment actions taken by my employer during the pervasive harassment due to my sex, my disability, and after submitting complaints. The actions are as follows.

a. March 16, 2021: I was denied an interview for the Chief Geologist position despite being an internally qualified candidate. Jaime Cogley informed me verbally I had, "a lack of leadership skills." There were no comments concerning my leadership skills on prior performance reviews.

b. May, 2021: My core decision making responsibilities were forcefully reassigned to Melissa Jetson. No explanation was given as to the reason why this was required.

c. August, 2021: During my mid-year performance review, Jaime Cogley blindsided me with negative comments. The comments were refuted by my boss in the final review. He also tried to persuade me to give up my leadership responsibilities to Vicki Mills during the same meeting.

d. October, 2021: My leadership responsibilities were given to Vicki Mills during the same time I was unknowingly accused of discrimination against women.

e. June, 2022: Sterling Cook resigned as Chief Geologist after management retaliation. Management put Heather Gloeckner in the interim Chief position despite her significant lack of experience and tenure. I was not invited by Mark Beres to pertinent meetings concerning production geology despite having the most experience.

f. August, 2022: I was denied the opportunity to interview for the Chief Geologist position despite being a qualified internal candidate and taking significant classes about leadership. Disclosed to Mark the significant disparity in salaries of other Senior Geologists. He refused to create a pay parity despite providing examples of other occurrences.

g. September, 2022: Jason Hirt was hired as the Chief Geologist, Heather Gloeckner was not qualified. Management created another Chief Geologist position for her to take.

h. July 27, 2023: My employment was terminated after engaging in multiple acts of protected activity in the weeks prior. Claims were made that I engaged in threatening behavior due to shaking hands and text messages taken out of context. I was having an anxiety attack. The reasons given for termination were workplace performance and workplace relationships. Irrefutable evidence disputes my employer's pretext for termination. Mark Beres signed the termination form. I had already reported him once for retaliation.

**9. Protected Activity and Company Response:** The following are examples of written or verbal protected activity from March 12, 2020 – March 23, 2024. Company policy explicitly states after an investigation is conducted, "The Company will discuss the incident and possible options with the Complainant." No such action was ever taken with all the following complaints. The following complaints give a picture of pervasive harassment due to my sex and retaliation by management for highlighting the behavior. Managements willingness to protect and look the other way when women were engaging in harassment also highlights discrimination.

a. March 12, 2020: Written complaint sent to HR rep Kami Williams concerning harassment. Never heard from HR nor was the complaint followed up.

b. May 5, 2020: Written complaint sent to Jaime Cogley about harassment from Melissa Jetson and Emily Willard and the effect it was causing to my relationship with my boss and health. Jaime didn't investigate. Told me there was nothing actionable in the complaint and made me feel like I was overreacting.

c. June 11, 2020: Written complaint sent to Mark Crouter about Melissa Jetson falsely accusing me of withholding information (continued harassment). Provided proof she was lying and complained about the behavior. Mark confirmed behavior and told me steps were being taken. No disciplinary action was taken.

d. September 8, 2021: Complained to HR reps Brenda Hewitt and Kami Williams verbally about Melissa Jetson defaming me (continued harassment) and the effect the behavior was having. I was told to go talk to Jaime Cogley. HR didn't follow up or appear to investigate.

e. October 4, 2021: Reported bullying (continued harassment) via email to supervisor Sterling Cook. No investigation or follow-up occurred. Sterling later told me he took it to Jaime Cogley who informed him management wouldn't do anything.

f. January 13, 2022: After being forcefully reassigned for the second time, I wrote a detailed 6-page complaint to the KGHMI ethics committee that highlighted pervasive harassment over the last two years and implicated management for their failure to properly handle complaints. Sterling Cook, my boss, gave me his full support in submitting the complaint. I witnessed the destruction of email evidence after this complaint was submitted. It is worth saying that I made no mention of a key piece of incriminating evidence that management lied about disclosure. Management hid an anonymous complaint made against me that accused me of discrimination against women in October of 2021. The date of discovery for this complaint is June 27, 2023. 300 days after the adverse employment action. Jaime Cogley left his role several months later. He was heavily implicated in my complaint. He moved into a remote contract job working under Mark Beres who replaced him.

g. February 9, 2022: I heard from Elwira Nowak about providing information for the investigation. It was scheduled for February 12, 2022. I provided information about the deletion of email evidence. She scheduled a meeting for a follow-up which she cancelled not long after. I never heard from anyone again concerning this complaint. Key witnesses including Sterling Cook, Logan Clark, and Fred Sanders all confirmed to me they were never interviewed.

h. August 15, 2022: Emailed the whistleblower hotline about retaliation after discovering Mark Beres fabricating reasons for why I wouldn't be interviewed for the Chief Geologist position. I never heard from anyone about this complaint.

i. August 25, 2022: Helped a victim of a verbally abusive racist rant from Joe Haskell submit a complaint to HR. Management found out I helped the victim and did not take appropriate action.

j. April 4th, 2023: KGHMI ethics committee informed me they were going to "re-investigate" my complaints. Parson Behle and Lattimer would conduct the investigation. Provided information to the ethics committee about Robinson covering up investigations and retaliating against witnesses. No investigation into those claims appeared to take place.

k. June 27th, 2023: Participated in internal investigation w/ Parson Behle and Lattimer. Provided detailed evidence of pervasive harassment. Provided evidence of management at Robinson covering for women engaging in harassment due to my sex. No follow up was given after investigation concluded.

l. July 16th, 2023: Witnessed Joe Haskell making disparaging remarks about employee he was supervising. Remarks were about the subordinate's intelligence and ability to learn. Comments would be discrimination if subordinate had a learning disability. Reported to Joe Haskell's boss Heather Gloeckner, and insisted it be reported to HR.

m. July 18th, 2023: Discovered Heather Gloeckner did not report to HR what happened. All witnesses now claimed they didn't "hear anything." Argued with Heather Gloeckner about her refusal to report behavior. I was threatened if I reported to HR. She made wild outlandish claims that made it clear she was retaliating. Claims made me look like I was abusive towards women. Left conversation and reported to my boss Jason Hirt about what happened. Gave me his blessing to escalate higher up. Reported retaliation to Robinson HR and the whistleblower platform. I also reported management retaliation against the victim of the racist rant. I was never contacted to be part of investigative process.

n. July 19th-25th, 2023: Reported retaliation, discrimination, and threat to my boss via text. I was not contacted to provide more information for the investigation.

o. July 20th, 2023: Reported retaliation, threat, and feeling unsafe to Darek Huebner. I was never contacted by Darek or HR concerning this complaint.

p. July 23rd, 2023: After discussion with key sources, it was discovered that many other Men onsite were fired or disciplined under similar circumstances to me. I sent a letter to the KGHMI ethics committee about management sanctioned discrimination and retaliation. I made other allegations that were made in good faith which I won't disclose at this time. I don't approve of some of the things I said in the letter, I was having an anxiety attack over what I discovered and the potential threat of retaliation.

q. July 24-27, 2023: Events occurred that I can only describe as perceived psychological warfare; Loud noises at night, cars parked in strange circumstances, phones ringing off the hook, text messages with links, harassment from KGHMI ethics committee members at strange times. I told the KGHMI ethics committee I was willing to cooperate with counsel present. I was hospitalized on the night of July 26th, 2023. Fired in the ambulance on the way to a mental health facility on July 27th, 2023, after insisting on counsel being present before cooperating.

r. March 23, 2024: Submitted a post-termination complaint to KGHM via their whistleblower platform alleging corruption. I requested anonymity. I provided an anonymous communication channel for them to investigate. KGHM did not ask any questions before closing the case. KGHM investigated to identify myself and then provided information in complaint to Parson Behle and Lattimer to attack my character in the eyes of the EEOC. I want to clear the air here since my words were used to attack me. Lethal force for self-defense would only be appropriate if I felt bodily harm was imminent. In no other case would violence be warranted. KGHM did not care to ask that. Considering circumstantial evidence of the harassment of whistleblowers/witnesses, suspicious accidental deaths, and continued symptoms of my disability, I wanted them to know that at no level of intimidation would I refuse to continue pursuing this matter.

**10. Disclosures of My Disability and Management Response:** The following are examples of written or verbal disclosures of symptoms I was suffering due to my disability from May 5, 2020 – July 25, 2023. Such disclosures warrant accommodation under the ADA. Management completely ignored the disclosures and the behavior that caused the development of my disability. During the end of July 2023, I suffered an anxiety attack due to the work environment that was severe enough to warrant hospitalization. False claims were made that attributed symptoms of my disability to threatening behavior. Management at Robinson and the KGHMI ethics committee were both aware of my issues with anxiety.

a. May 5th, 2020: Emailed complaint to Jaime Cogley that stated," The level of harassment and favoritism I'm witnessing is causing me severe anxiety and sleeplessness. I am losing a lot of weight." At the end of the complaint, I asked for an investigation or to be removed from that role. Jaime Cogley told me there was nothing actionable in the complaint and he made me feel like I was overreacting. No accommodation or path for treatment was provided. The email was deleted after disclosure of this complaint to the KGHMI ethics committee on January 12, 2022.

b. January 13, 2022: Complaint to KGHMI ethics committee disclosed, "The emotional distress in coping with the behavior and the lack of support I received for reporting the behavior greatly affected my performance and health. I continue to struggle with anxiety as I have to work in an environment still frequented by Melissa Jetson and Jim Biggs" and, "Upon further being pressured to leave my current role and the effect of working in a hostile work environment, I left and Vicki Mills was put in charge of my previous responsibilities." A follow-up meeting to this complaint was canceled. I never heard from anyone again. No accommodation or path for treatment was provided.

c. August 12, 2022: Complaint to KGHMI ethics committee disclosed, "We recently had training on legal aspects and liability. It gave me anxiety as many of the things that companies should never do to their employees was done to me." Never heard from anyone about the complaint, No accommodation or path for treatment was provided.

d. June 27, 2023: Disclosed to Christina Jepson (Parson Behle Lattimer) that my mental health had deteriorated significantly when the May 5, 2020 complaint was written and that it was 100% due to the work environment. No accommodation or path for treatment was offered by Robinson.

e. July 2, 2023: In the comments of information I provided to Sarah Ferguson (Parson Behle Lattimer), "I had to deal with anxiety, lack of sleep, and paranoia for weeks before I started feeling better." No accommodation or path for treatment was provided.

f. July 14, 2023: Verbally disclosed to Jason Hirt my paranoia and anxiety from participation in the internal investigation. No indication it was reported. I was not offered accommodation or a path for treatment.

g. July 19, 2023: Told my boss via text, "not only did she threaten me but she lied about it too. I would not feel safe coming into work on Tuesday." No concern at all was given to my wellbeing. I was not offered accommodation.

h. July 20, 2023: In a complaint written to Darek Huebner, "I am beginning to feel unsafe working here." No concern was given to my wellbeing, and no response was ever received.

i. July 23, 2023: In written email to ethics committee I wrote, "I am starting to fear for my safety especially if these employees are aware that I know. Please send an email confirming receipt. I will seek the advice of counsel soon. I am going to hunker down in my house till I hear more information." And in body of complaint, "Due to the seriousness of these allegations and the fact that it was unclear whether Heather's threat included bodily harm, I feel unsafe at work and won't be showing up until I feel confident protections are in place for me." No email receipt was sent. Two days later I discovered what looked like someone waiting in their car for me to leave. I stared at them and was about to go talk with them when they sped off. 10 minutes later I heard from John Haynes (member of the KGHMI ethics committee).

j. July 25, 2023: Told John Haynes via text, "Hey, John. I'm a bit of a nervous wreck right now. Might head to the clinic. Just need a little time. Maybe this evening?" I never let him know when a good time to talk was. That night there were two loud

disruptive noises outside my house. My phone blew up with text messages, calls, and voicemails immediately on stepping out of bed the following morning. I went to the clinic to try and get medication. I was not able to get in.

k. July 26, 2023: I was admitted to hospital.

l. July 27, 2023: I was fired in the ambulance after telling John I would cooperate with the investigation with counsel present.

**11. Examples of Differential Treatment of Men vs. Women:** The following are examples of men being targeted unfairly and women that were given preferential treatment.

a. Sterling Cook: He gave me his full support when I submitted the January, 2022 complaint. Management at Robinson told him after, "Robinson survives on cliques." Refused to engage in unethical behavior. Sometime after, he was accused of discrimination against women. Complaint was immediately substantiated, and he was disciplined. Resigned after being retaliated against for months by management.

b. Logan Clark: He was having significant conflict with Bridgette Miller and Emily Willard. Told HR in his exit interview they were the reason for his departure. No disciplinary action was taken.

c. Brett Wagers: I was on the receiving end of pervasive harassment from women for years. Management ignored my complaints. When an anonymous complaint was made against me accusing me of discrimination against women, it was not disclosed to me. A month prior to the complaint, I had complained about Melissa defaming me. Management did not investigate who submitted a malicious complaint against me.

d. Mark Beres: All negative documents concerning my termination had Mark Beres name on it in my personnel file. There was no evidence in my personnel file to back up Mark's assertions. There was no evidence of involvement of the women in management for my termination.

e. Other Men: I know significant details about the targeting of several other men by management. The details came from multiple sources. I will not disclose the details at this time to protect my sources.

f.  Emily Willard: Pervasively harassed and targeted several individuals at work. Her behavior was constantly reported and ignored by management. Several individuals told me they were suffering mental health issues due to her behavior. She wasn't fired until Heather Gloeckner got involved.

g.  Jessica Hurst: Sources told me Jessica and Amanda Hilton were good friends and regularly did yoga together. I have heard from multiple people there have been several serious complaints about Jessica's behavior. No action was ever taken.

h.  Bridgette Miller: I watched her receive promotions after accusing Sterling of discrimination. I was regularly informed of behavioral problems from Bridgette. Bridgette was one of the key reasons Logan Clark left.

i.  Melissa Jetson: Melissa was allowed to pervasively harass me to advance her career. Documents were created attacking my character and competence. She was allowed to distribute them to management without fear. She told Joe Haskell her opinion that I hated women. I had two incidents with her that involved workplace violence and heard about others. No disciplinary action was ever taken.

j.  Heather Gloeckner: Heather was given the interim Chief Geologist position after Sterling left over me. She did not have the appropriate level of experience or tenure for the job. They created another Chief Geologist position since she wasn't qualified. Claimed I engaged in threatening behavior, yelled at her, and ambushed her. Management substantiated her claims and never contacted me for my side.

## CLAIMS

### First Claim

(Name the law or right violated: Civil Rights act of 1964 Title VII (Discrimination: Sex) (Name the defendants who violated it: Robinson Nevada Mining Company ) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.]

**12. Prima Facie Elements:** The prima facie elements required to prove Discrimination due to Sex are as follows; Membership in the Protected Class, Adverse Employment Action, Qualification for the Position, and Comparison to Similarly Situated Individuals.

    a. I am a Male. The adverse employment actions related to my sex are under section 8.b, 8.c, 8.d, 8.e, 8.g, and 8.h. Two involve the stripping of my responsibilities that were given to women. Both reassignments occurred after defamatory claims were made by women. One of the claims accused me of discrimination against women and was hidden from me by management. One involves being blindsided with negative feedback in my performance review. I believe the feedback and the pressure to include it in my review came from women. Two involve the promotion of Heather Gloeckner to interim Chief and then the creation of another Chief position due to her lack of qualifications for the Interim position, and the last is my termination after Heather's allegations were substantiated without my chance for rebuttal on July 27, 2023.

    b. Many of these adverse employment actions fall outside the statute of limitations and would therefore be "time-barred." I will contend they should be included due to the continuing violation doctrine. Also, the claim that I discriminated against women was made in October, 2021 and is what I believe one of the most significant incidents of pervasive harassment due to my sex. Evidence will show Robinson management did not disclose this complaint

until 300 days past the adverse employment action. I discovered the incriminating evidence on June 27, 2023, within the statute of limitations. Existing case law makes it clear that the statute of limitations should be tolled when the employer deliberately hides incriminating evidence. The discovery rule therefore applies, and the adverse action related to the complaint and those before it should be admitted.

c. I was qualified for all positions. My academic background and tenure made me a qualified candidate for the Chief Geologist position as evidence will prove. All my performance reviews were fully successful, and I had never been on a performance improvement plan.

d. Section 11 shows the glaring disparity between how men were treated and how women were treated. Men could have their careers and character destroyed by complaints from women that were substantiated immediately. The women that made these claims if beneficial to managements goals, were protected and given special treatment. Legitimate complaints about pervasive harassment from women fell on deaf ears and weren't investigated. Company policy was ignored concerning complaints against women. Management stripped responsibilities from men and gave them to women without a clear divide in qualifications. Also, when opportunities for promotions were available, less qualified women were chosen as evidenced by Heather Gloeckner's elevation to a Chief.

e. I am contending gross negligence with my former employer's obligations under The Civil Rights Act of 1964 Title VII. I withstood 3 years of pervasive harassment from women due to my sex. The pervasive harassment and lack of support caused severe emotional distress and held back my career significantly. I may never be able to work in a high paying mining job again due to the inaction of my employer and the steps I had to take for accountability. The fact so many complaints were made and ignored by management at the highest levels shows a reckless disregard for the well-being of their employees that are being discriminated against. Serious questions need to be asked why a company would go to such extreme levels to protect management staff that recklessly violated the civil rights of its employees.

**Second Claim**

(Name the law or right violated: Civil Rights act of 1964 Title VII (Retaliation: Opposition & Participation)) (Name the defendants who violated it: Robinson Nevada Mining Company, Mark Beres II, and John Haynes) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.]

**13. Prima Facie Elements:** The prima facie elements required to prove retaliation are engagement in protected activity, an adverse employment action, and causal connection.

a. State law allows for defendants to be personally liable for retaliation. Mark Beres and Robinson management were explicitly warned during liability training of this fact. My complaint will likely be amended to serve other defendants in this case for retaliation. Anonymous sources with false claims were used in the EEOC respondent statement to protect them from litigation. Management, however, only implicated Mark Beres with the evidence they provided in my file. John Haynes implicated himself with the actions he took in response to my whistleblower complaint as a member of the KGHMI ethics committee.

b. Section 9 highlights 18 acts of protected activity. My employer will claim that many of the complaints highlighting continued harassment are not protected because I did not explicitly state that the harassment was due to my sex. Existing case law would disagree, and our company policy explicitly states what I described as workplace harassment. The anonymous complaint under 7.g destroys this narrative and highlights that the pervasive harassment was due to my sex. All prior complaints highlighting the behavior are protected activity under existing case law. It is not surprising that management hid this complaint to hide the discrimination. Management believed waiting 300 days past the adverse employment action for disclosure would absolve them of the liability.

c. I believe the adverse employment actions under 8.a, 8.e, 8.f, 8.g, and 8.h highlight retaliation in response to protected activity. Jaime Cogley labeled me as having, "poor leadership skills" despite not having any comments on performance reviews about my leadership. Good policy would be to interview qualified internal candidates valued by the company, even if they may be lacking some key qualifications. I doubt management will be able to produce a list of the qualifications they felt I failed to meet when I applied for this position. Jaime's behavior highlights management's policy to label anyone that submits complaints as having poor leadership skills or performance. A clear act of retaliation. The other adverse actions highlight Heather's promotion over me for positions she was less qualified for. Evidence will be provided of Mark Beres fabricating reasons and changing goal posts to legitimize refusing to interview me for a promotion. The facts will also show the KGHMI ethics committee and Robinson management did not follow proper procedures after my complaint alleging retaliation from Mark Beres. The last and final adverse action was my termination.

d. To lay the groundwork for causal connection, I will contend that I engaged in multiple acts of protected activity in the weeks just prior to my termination. A clear causal connection. 9.k, 9.l, 9.m, 9.n, 9.o, and 9.p. The first was my participation in the internal investigation by Parson Behle and Latimer. I believe the results of that investigation showed management sanctioned discrimination and retaliation. The investigation also showed I was the victim of pervasive harassment due to my sex that management covered for. My participation in providing key evidence likely enraged management.

e. The next significant incident was witnessing potential discriminatory conduct from Joe Haskel. Who is a repeat offender of discrimination. I reported his behavior to his boss Heather Gloeckner. I discovered Heather was going to cover the behavior up and use a false narrative to blame me. Reported the retaliation to multiple individuals and the threat she made. I was never contacted to be part of the investigative process and believe all management was ordered to ignore me.

f. The last act of protected activity was blowing the whistle on what looked like a civil conspiracy and the potential for criminal activity after talking to multiple sources. The complaint also highlighted circumstantial evidence of management sanctioning discrimination and retaliation.

g. The following events occurred in order after blowing the whistle; Complete silence and lack of response from KGHMI ethics committee for two days, witnessing a car parked and ready to follow me upon leaving my house, heard from John Haynes 10 minutes after the car sped off, telling John Haynes I was a nervous wreck and needed time for treatment, two loud disruptive noises outside my house spaced hours apart in the middle of the night, the KGHMI ethics committee blowing up my phone as soon as I stepped out of bed, the feeling I was under surveillance, witnessed a car parked outside my bedroom window in unusual location, went to clinic and unable to secure treatment, talked to KGHMI ethics committee at 11:00 am, no concern was given about my wellbeing and they only wanted me to reveal information, told them I would cooperate with counsel present, hung up after continued harassment for information, text messages that looked to have malicious links, parents landline blowing up when hiding out, friends at the mine reaching out for information. I could not control the anxiety and paranoia. I was hospitalized on the night of the 26th. Fired in the ambulance on the way to a mental health facility on the 27th. I was fired shortly after reiterating to John Haynes with my intent to obtain counsel before participating. It is unclear if my employer had any involvement in these events.

h. The pretext for my termination was workplace performance and the deterioration of workplace relationships. My last day working at Robinson was July 18, 2023. I had a mid-year performance review with Jason Hirt on July 14, 2023. There were no negative comments concerning my performance. All signed performance reviews were fully successful with positive comments. The negative comments on my mid-year review in 2021, were refuted in the year-end by Sterling Cook as he was present to witness the abuse. I have never been on a performance improvement plan.

i. After reviewing the respondent statement provided to the EEOC, I witnessed negative comments concerning my performance that were added to my file after the fact. Witnesses with mining experience will be able to determine the claims as malicious falsehoods. Especially considering the performance event was never communicated to me and other employees in similar positions committed far worse acts with no penalty. These performance events were also not in my personnel file after termination. There is either a secret file or they added it after. Both of which are highly unethical and potentially illegal.

j. The entire management team appeared to be retaliating. Claiming I had deteriorating workplace relationships after engaging in acts of protected activity is the literal definition of retaliation. Relationships that deteriorated after engaging in protected activity is an illegal reason for termination. The above information destroys the pretext for my termination.

k. Mark Beres and John Haynes need to be held personally accountable for the malicious nature of their retaliation. Mark Beres signed the termination notice, put a false pretext and illegal reason for the termination, and checked the box ensuring I could never be reconsidered for employment at Robinson. I had to put the false pretext on all my employment applications and had opportunities fall through at the end after explaining the true reasons I was fired. Nobody wants to hire someone perceived as a complainer.

l. Both Mark Beres and John Haynes still work for KGHMI, which shows a reckless disregard for abiding by company policy surrounding whistleblowers and retaliation. The only one that lost their job was the whistleblower. There was emotional distress for the continuing violations of company policy, disregard for my well-being, and the malicious nature of the retaliation.

**Third Claim**

(Name the law or right violated: Americans with Disabilities Act (ADA)) (Name the defendants who violated it: Robinson Nevada Mining Company) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.]

**14. Prima Facie Elements: The prima facie elements required to prove discrimination under the ADA include; Having an ADA protected disability, Qualified for the role w/ or w/o accommodation, Adverse employment action, and circumstances of adverse action relating to disability discrimination.**

    a. I was diagnosed with Generalized Anxiety Disorder (GAD) by Desert Parkway Behavioral Hospital and CoreMental Health after my termination. GAD is protected under the ADA. I likely developed GAD in March, 2020 due to the work environment and progressed to become more severe due to the company response and continued behavior.

    b. Despite significant flare ups of my disability, I was still able to perform all duties as assigned. All my performance reviews were fully successful.

    c. The adverse employment actions can be seen in section 10 when my employer completely ignored communication concerning flare ups of my disability due to the work environment. There are 10 disclosures in complaints of the symptoms of my disability. Investigations didn't appear to take place, no follow-up occurred, and I wasn't offered a link to the EAP so I could get help. During the disclosure at 10.a, I asked to be removed from the situation or have an investigation decide. I was told there was nothing actionable in the complaint and made to feel like I was overreacting. The above facts show gross negligence in fulfilling their obligations under the ADA to offer accommodation.

    d. The last adverse action is my termination. In the verbiage of the respondent statement sent to the EEOC, part of the reason for my termination was the safety of other employees. The ADA is clear, termination of an employee for direct threat to safety can only occur if both of the following are true; harm

must be significantly likely to occur, and the amount of potential harm must be substantial. My employer's evidence is text messages taken out of context, a he said/she said argument, and shaking hands. No implicit or explicit threats were made. The text message stated, "really doesn't feel safe" and is in reference to Heather threatening me. They snipped the text message in the exhibit that explains my reasoning. The shaking hands and feelings of being unsafe were a direct result of a significant flare up of my disability. I was never contacted to provide this context and shows managements intention to continue discriminating due to my ADA protected disability. The circumstances make me believe management got pleasure out of antagonizing me and ignoring me.

e.  The KGHMI ethics committee was also very aware of my anxiety issues, and I communicated as much via text to John Haynes (10.j). The initial lack of response and harassment I faced from them after blowing the whistle shows a reckless disregard for my well-being and perhaps the intentional infliction of emotional distress.

f.  The evidence in the paragraphs above clearly demonstrates the circumstances of adverse actions taken are in relation to my ADA protected disability. I made disclosures of my disability to Robinson management, the KGHMI ethics committee, and the internal investigators. Zero concern was given to my well-being. I will likely have to live with elevated anxiety and paranoia for the rest of my life due to the company's response. I no longer enjoy activities that are high risk due to fear of a deliberate accident. The life of a whistleblower that was intimidated is not glamorous, but I would do it all again to root out corruption for the betterment of humanity.

**DEMAND FOR RELIEF**

[State what you want the Court to do.  Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something.  If you are asking for money, you can say how much you are asking for and why you should get that <u>amount, or</u> describe the different kinds of harm caused by the defendant.]

15. <u>My demand for relief will be financial. I had communicated multiple times in my complaints that I wasn't interested in money and would absolve the company of liability if they stepped in and did the right thing. Having to take my case this far no longer makes that an option. I will motion to have the liability cap on compensation waived for this case due to my employer's gross negligence and reckless disregard for the well-being of its employees.</u>

    a.  Back Pay – 8 months of pay while I was out of work. Considering the continuing violations from retaliation, I will contend that the pay should be at the compensation amount of a Chief Geologist in March of 2021. I was on unemployment insurance most of the time which clearly demonstrates an active work search history. I should also receive back pay for the disparity in compensation for a Chief Geologist from March 2021 – July 27, 2023.

    b.  Front Pay – The pay disparity between my current job and my former job is significant. I must stay so many years in federal service to obtain time-linked benefits. I will likely stay at least 3 years to receive competitive status benefits. Considering the malicious nature of the false claims, my desire to potentially unionize Robinson, my desire to stay in Ely to take care of aging parents, and the harmful nature of taking litigation to your employer, I will likely never work a high paying mining job again. Front Pay like Back Pay should be calculated according to the Chief Geologist's compensation due to retaliation.

    c.  Emotional Distress – Damages for emotional distress should be assessed. The refusal to follow company policy concerning complaints, the reckless disregard for my well-being, my hospitalization and humiliation for having a

mental breakdown, the complete lack of support after engaging in protected activity, and the distress of being out of work for 8 months.

d. Medical Expenses – I had over $30,000 dollars in medical expenses related to my hospitalization, paying insurance out of pocket, medications, and therapy. I expect that number to continue growing.

e. Pain and Suffering – Pain and suffering should be assessed for the medical treatment required.

f. Punitive Damages – The number of men that were targeted with false and exaggerated complaints should meet the requirements for punitive damages to be assessed. The company's gross negligence in fulfilling their obligations under the Civil Rights Act of 1964 Title VII and the Americans with Disabilities Act should not be taken lightly. Even when the parent company became aware of the violations, they continued to look the other way instead of investigating. The gross negligence goes all the way to the top of the company.

g. Attorney Fees – I paid for half a dozen or more consultations. I should receive compensation for having to do so. If I retain an attorney for this case, those fees will also apply.

h. Travel and Lodging for Medical – Most of my treatments were in Las Vegas that required travel and lodging expenses.

i. Lost Deposits for Family Emergency – My family lost significant money attributed to a trip that had to be canceled due to my medical emergency. Due to my employer's negligence, they should pay for that cost.

### DEMAND FOR JURY TRIAL

[*Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.*]

☑ Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Date: 1/26/25     Sign Name: Brett Wag

Print Name: Brett Wagers

Page 23 of 23

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

San Francisco District Office
450 Golden Gate Avenue 5 West, PO Box 36025
San Francisco, CA 94102
(650) 684-0910
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: **10/31/2024**

**To:** Mr. Brett R. Wagers
1026 77th St. East
ELY, NV 89301
Charge No: 550-2023-02831

EEOC Representative and email:     DAVID BRANNEN
SENIOR INVESTIGATOR
DAVID.BRANNEN@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 550-2023-02831.

On behalf of the Commission,

*Scott Doughtie*

**for:**     Nancy A. Sienko
District Director

**Cc:**
Sarah Ferguson
Parsons Behle & Latimer
50 W LIBERTY ST STE 750
Reno, NV 89501

Ethan Foster
Parsons Behle & Latimer
50 W LIBERTY ST STE 750
Reno, NV 89501

Christina Jepson
Parsons Behle & Latimer
201 S MAIN ST STE 1800
Salt Lake City, UT 84111

Kami Williams
Robinson Nevada Mining Company
4232 W. White Road, #44
Ruth, NV 89319

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

#### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

#### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

#### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) A Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 550-2023-02831 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Nancy A. Sienko, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 550-2023-02831 to the District Director at Nancy A. Sienko, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

**are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.