Your name: **Brett Wagers**

Address: **1026 77th St. E.**

**Ely, NV 89301**

Phone Number: **702-335-2642**

E-mail Address: **brett.wagers@gmail.com**

Pro se

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Brett Wagers | Case Number: **3:25-cv-00055-MMD-CLB** |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| vs. | |
| Robinson Nevada Mining Company | |
| & | DEMAND FOR A JURY TRIAL |
| Mark Beres II | |
| & | Yes ☒         No ☐ |
| John Haynes | |
| & | |
| Jane Doe | |
| Defendants | |

## JURISDICTION

*[Usually only two types of cases can be filled in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.]*

1. My case belongs in federal court

☒ under <u>federal question jurisdiction</u> because it involves a federal law or right.

*[Which federal law or right is involved?]* American with Disabilities Act (ADA) & Civil Rights Act of 1964, Title VII (Retaliation and Discrimination (Male)) & FMLA Violations

☐ under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the defendants and the amount of damages is more than $75,000.

**VENUE**

*[Nevada is one "judicial district." Check the box for each venue option that applies.]*

2.   Venue is appropriate in this Court because:

☒ a substantial part of the events I am suing about happened in this district.

☐ a substantial part of the property I am suing about is located in this district.

☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity <u>and</u> I live in this district.

☐ at least one defendant is located in this District and any other defendants are located in California.

**INTRADISTRICT ASSIGNMENT**

*[This District has two unofficial divisions. One is the "Northern Division" covering northern Nevada including Carson City, Churchill, Douglas, Elko, Eureka, Humboldt, Lander, Lyon, Mineral, Pershing, Storey, Washoe, and White Pine counties at the courthouse in Reno. One is the "Southern Division" covering southern Nevada including Clark, Esmeralda, Lincoln, and Nye counties at the courthouse in Las Vegas.]*

3.   Because this lawsuit arose in _____White Pine_____ County, it should be assigned to the _____Northern_____ Division of this Court.

**PARTIES**

4. Plaintiff. *[Write your name, address, and phone number. Add a page for additional info]*

Name:        Brett Wagers

Address:     1026 77th St. E., Ely, Nevada 89301

Telephone:   702-335-2642

5. Defendants. *[Write each defendant's full name, address, and phone number.]*

Name:        Robinson Nevada Mining Company

Address:     4232 W. White Pine County Road 44A, Ruth, Nevada, 89319

Telephone:   775-289-7000

Name:         Mark Beres II

Address:      White Pine County, Nevada

Telephone:


Name:         John Haynes

Address:      Maricopa County, Arizona

Telephone:


Name:         Jane Doe

Address:      White Pine County, Nevada

Telephone:


## STATEMENT OF FACTS

*[Write a short and simple description of the facts of your case. Include basic details such as <u>where</u> the events happened, <u>when</u> things happened and <u>who</u> was involved. Put each fact into a separate, numbered paragraph, starting with paragraph number 6. Use more pages as needed.]*


6. **Introduction:** Plaintiff, Brett Wagers, is a resident of Ely, Nevada. I worked for Robinson Nevada Mining Company from January 2011 – July 27th, 2023. Prior to adverse employment actions, I was a Senior Geologist w/ leadership responsibilities. My sex is Male. My responsibilities were pivotal for the profitability of the mine. During the events summarized below, Amanda Hilton was the General Manager of the mine.

7. **Incidents of Harassment:** From approximately February 2020 to my termination date on July 27, 2023, I was on the receiving end of pervasive harassment due to my sex from several women co-workers at work. I will briefly summarize the significant incidents.

    **a.**    February, 2020 – Discovered co-worker, Emily Willard, was telling others at work that my platonic relationship with a female co-worker was, "inappropriate and

unprofessional." I was not her direct supervisor nor was our relationship intimate. Claims would not have been made if I were a woman. Reported verbally to Jaime Cogley, Tech Services Manager, no disciplinary action was taken.

**b.**    March, 2020 – Discovered disparaging note in laptop that read, "Sayonara Poopy Mcpoopface." My office door was locked preventing movers from moving my furniture to the new building. My office was the only one that wasn't moved. Reported harassment to Kami Williams, HR rep, via email. No action taken. This is a clear case of retaliatory harassment.

**c.**    March, 2020 – May, 2020 – I was on the receiving end of pervasive harassment from Melissa Jetson and Emily Willard. The behavior created a hostile work environment and caused the development of a disability protected under the ADA. Emailed complaint to Jaime Cogley on May 5, 2020. No investigation or disciplinary action was taken.

**d.**    May, 2020 – January 1, 2021 – Pervasive harassment continued, and two incidents of workplace violence occurred. Both instances occurred when Melissa Jetson yelled in my face and used threatening mannerisms in response to what was cordial conversation. One incident occurred when discussing my relationship with Kayle, she yelled, "You violated the HR handbook, look it up." I did not violate HR policy and the claim would not have been made if I were a woman. Workplace violence wasn't reported till much later due to prior inaction of management and HR. Melissa Jetson was moved to a different department starting in January 1, 2021. Management did not disclose the reason she was moved or whether she requested the move herself. I observed what I believed to be a souring relationship with our boss and her.

**e.**    March 26, 2021 – Melissa Jetson created a power point presentation detailing the stripping of responsibilities from myself to her. The presentation attacked my expertise and competence. Once complete, the document was distributed to management and approved without my knowledge.

**f.**    September, 2021 – I became aware of another presentation that accused me of not

communicating well enough. Again, the document was distributed to management without my knowledge.

g.  October, 2021 – An anonymous complaint was made accusing me of discriminating against women. Management did not disclose the complaint to me and it wasn't revealed to me until June 27, 2023. I was forcefully reassigned and stripped of leadership responsibilities during the time the complaint was submitted.

h.  July 18, 2023 – Heather Gloeckner, part of the management team, accused me of threatening behavior, ambushing her, and yelling inappropriately. The opposite was true. She threatened me if I reported behavior to HR and I quieted my voice to continue the conversation when she accused me of yelling.

i.  January 2022 – July 2023 – After reporting the hostile work environment caused by Melissa Jetson and the effect her continued physical presence had, I witnessed more frequent visits from Melissa to our department which was not welcome. She directly undermined guidance provided by our leadership that ended up costing the mine hundreds of thousands of dollars in misrouted material.

**8. Adverse Employment Actions:** The following are adverse employment actions taken by my employer during the pervasive harassment due to my sex, my disability, and after submitting complaints. The actions are as follows.

a.  March 16, 2021: I was denied an interview for the Chief Geologist position despite being an internally qualified candidate. Jaime Cogley informed me verbally I had, "a lack of leadership skills." There were no comments concerning my leadership skills on prior performance reviews.

b.  May, 2021: My core decision making responsibilities were forcefully reassigned to Melissa Jetson. No explanation was given as to the reason why this was required. There were no performance indicators I was failing to meet.

c.  August, 2021: During my mid-year performance review, Jaime Cogley blindsided me with negative comments. He told me later they had come from, "what other people

have said." The comments were refuted by my boss in the final review. He also tried to persuade me to give up my leadership responsibilities to Vicki Mills during the same meeting. It remains to be seen who the other people were and if he was being pressured to strip me of responsibilities.

    **d.**    October, 2021: My leadership responsibilities were given to Vicki Mills during the same time I was unknowingly accused of discrimination against women.

    **e.**    June, 2022: Sterling Cook resigned as Chief Geologist after management retaliation. Management put Heather Gloeckner in the interim Chief position despite her significant lack of experience and tenure. I was not invited by Mark Beres to pertinent meetings concerning production geology despite having the most experience.

    **f.**    August, 2022: I was denied the opportunity to interview for the Chief Geologist position despite being a qualified internal candidate and taking significant classes about leadership. Mark solicited me to enter his office after applying which he used as an opportunity to bully and intimidate. He disclosed several false reasons I wouldn't be interviewed and told me I used to be an all star performer but wasn't anymore. Mark had only been in my direct supervisor line less than 2 months at the time. Disclosed to Mark the significant disparity in salaries of other Senior Geologists. He refused to create a pay parity despite providing examples of other occurrences.

    **g.**    September, 2022: Jason Hirt was hired as the Chief Geologist, Heather Gloeckner was not qualified. Management created another Chief Geologist position for her to take. Position was tailored for her experience/tenure and was not needed. Men did not have positions created for them.

    **h.**    July 27, 2023: My employment was terminated after engaging in multiple acts of protected activity in the weeks prior. Claims were made that I engaged in threatening behavior due to shaking hands and text messages taken out of context. I was having an anxiety attack. Claims were also made that I ambushed and yelled inappropriately during an argument. The claims made me look like a stereotypical sexist man. The

reasons given for termination were workplace performance and workplace relationships. Irrefutable evidence disputes my employer's pretext for termination. Mark Beres signed the termination form. I had already reported him once for retaliation.

**9. Protected Activity and Company Response:** The following are examples of written or verbal protected activity from March 12, 2020 – March 23, 2024. Company policy explicitly states after an investigation is conducted, "The Company will discuss the incident and possible options with the Complainant." No such action was ever taken with all the following complaints. The following complaints give a picture of pervasive harassment due to my sex and retaliation by management for highlighting the behavior. Managements willingness to protect and look the other way when women were engaging in harassment also highlights discrimination.

    **a.** March 12, 2020: Written complaint sent to HR rep Kami Williams concerning harassment. Never heard from HR nor was the complaint followed up.

    **b.** May 5, 2020: Written complaint sent to Jaime Cogley about harassment from Melissa Jetson and Emily Willard and the effect it was causing to my relationship with my boss and health. I explicitly mentioned a hostile work environment. Jaime didn't investigate. Told me there was nothing actionable in the complaint and made me feel like I was overreacting.

    **c.** June 11, 2020: Written complaint sent to Mark Crouter about Melissa Jetson falsely accusing me of withholding information (continued harassment). Provided proof she was lying and complained about the behavior. Mark confirmed behavior and told me steps were being taken. No disciplinary action was taken.

    **d.** September 8, 2021: Complained to HR reps Brenda Hewitt and Kami Williams verbally about Melissa Jetson defaming me (continued hostility) and the effect the behavior was having. I was told to go talk to Jaime Cogley. HR didn't follow up or appear to investigate.

    **e.** October 4, 2021: Reported bullying (continued hostile work environment ) via email

to supervisor Sterling Cook. No investigation or follow-up occurred. Sterling later told me he took it to Jaime Cogley who informed him management wouldn't do anything.

f.    January 13, 2022: After being forcefully reassigned for the second time, I wrote a detailed 6-page complaint to the KGHMI ethics committee that highlighted pervasive harassment over the last two years and implicated management for their failure to properly handle complaints. Sterling Cook, my boss, gave me his full support in submitting the complaint. I explicitly mentioned a hostile work environment several times. I witnessed the destruction of email evidence after this complaint was submitted. It is worth saying that I made no mention of a key piece of incriminating evidence that management lied about disclosure. Management hid an anonymous complaint made against me that accused me of discrimination against women in October of 2021. The date of discovery for this complaint is June 27, 2023. 300 days after the adverse employment action. Jaime Cogley left his role several months later. He was heavily implicated in my complaint. He moved into a remote contract job working under Mark Beres who replaced him.

g.    February 9, 2022: I heard from Elwira Nowak about providing information for the investigation. It was scheduled for February 12, 2022. I provided information about the deletion of email evidence. She scheduled a meeting for a follow-up which she cancelled not long after. I never heard from anyone again concerning this complaint. Key witnesses including Sterling Cook, Logan Clark, and Fred Sanders all confirmed to me they were never interviewed.

h.    August 15, 2022: Emailed the whistleblower hotline about retaliation after discovering Mark Beres fabricating reasons for why I wouldn't be interviewed for the Chief Geologist position. I never heard from anyone about this complaint.

i.    August 25, 2022: Helped a victim of a verbally abusive racist rant from Joe Haskell submit a complaint to HR. Management found out I helped the victim and did not take appropriate action.

**j.**   April 4th, 2023: KGHMI ethics committee informed me they were going to "re-investigate" my complaints. Parson Behle and Lattimer would conduct the investigation. Provided information to the ethics committee about Robinson covering up investigations and retaliating against witnesses. No investigation into those claims appeared to take place.

**k.**   June 27th, 2023: Participated in internal investigation w/ Parson Behle and Lattimer. Provided detailed evidence of pervasive harassment. Provided evidence of management at Robinson covering for women engaging in harassment due to my sex. No follow up was given after investigation concluded.

**l.**   July 16th, 2023: Witnessed Joe Haskell making disparaging remarks about employee he was supervising. Remarks were about the subordinate's intelligence and ability to learn. Comments would be discrimination if subordinate had a learning disability. Reported to Joe Haskell's boss Heather Gloeckner, and insisted it be reported to HR.

**m.**   July 18th, 2023: Discovered Heather Gloeckner did not report to HR what happened. All witnesses now claimed they didn't "hear anything." Argued with Heather Gloeckner about her refusal to report behavior. I was threatened if I reported to HR. She made wild outlandish claims that made it clear she was retaliating. Claims made me look like I was abusive towards women. Left conversation and reported to my boss Jason Hirt about what happened. Gave me his blessing to escalate higher up. Reported retaliation to Robinson HR and the whistleblower platform. I also reported management retaliation against the victim of the racist rant. I was never contacted to be part of investigative process.

**n.**   July 19th-25th, 2023: Reported retaliation, discrimination, and threat to my boss via text. I was not contacted to provide more information for the investigation.

**o.**   July 20th, 2023: Reported retaliation, threat, and feeling unsafe to Darek Huebner. I was never contacted by Darek or HR concerning this complaint.

**p.**   July 23rd, 2023: After discussion with key sources, it was discovered that many other Men onsite were fired or disciplined under similar circumstances to me. I sent a letter

to the KGHMI ethics committee about management sanctioned discrimination and retaliation. I made other allegations that were made in good faith which I won't disclose at this time. I don't approve of some of the things I said in the letter, I was having an anxiety attack over what I discovered and the potential threat of retaliation.

q.    July 24-27, 2023: Events occurred that I can only describe as perceived psychological warfare; Loud noises at night, cars parked in strange circumstances, phones ringing off the hook, text messages with links, harassment from KGHMI ethics committee members at strange times. I told the KGHMI ethics committee I was willing to cooperate with counsel present. I was hospitalized on the night of July 26th, 2023. Fired in the ambulance on the way to a mental health facility on July 27th, 2023, after insisting on counsel being present before cooperating.

r.    March 23, 2024: Submitted a post-termination complaint to KGHM via their whistleblower platform alleging corruption. I requested anonymity. I provided an anonymous communication channel for them to investigate. KGHM did not ask any questions before closing the case. KGHM investigated to identify myself and then provided information in complaint to Parson Behle and Lattimer to attack my character in the eyes of the EEOC. I want to clear the air here since my words were used to attack me. Lethal force for self-defense would only be appropriate if I felt bodily harm was imminent. In no other case would violence be warranted. KGHM did not care to ask that. Considering circumstantial evidence of the harassment of whistleblowers/witnesses, suspicious accidental deaths, and continued symptoms of my disability, I wanted them to know that at no level of intimidation would I refuse to continue pursuing this matter.

**10. Disclosures of My Disability and Management Response:** The following are examples of written or verbal disclosures of symptoms I was suffering due to my disability from May 5, 2020 – July 25, 2023. Such disclosures warrant accommodation under the ADA. Management completely ignored the disclosures and the behavior that caused the development of my disability. During the

end of July 2023, I suffered an anxiety attack due to the work environment that was severe enough to warrant hospitalization. False claims were made that attributed symptoms of my disability to threatening behavior. Management at Robinson and the KGHMI ethics committee were both aware of my issues with anxiety.

    a.    May 5th, 2020: Emailed complaint to Jaime Cogley that stated," The level of harassment and favoritism I'm witnessing is causing me severe anxiety and sleeplessness. I am losing a lot of weight." At the end of the complaint, I asked for an investigation or to be removed from that role. Jaime Cogley told me there was nothing actionable in the complaint and he made me feel like I was overreacting. No accommodation or path for treatment was provided. The email was deleted after disclosure of this complaint to the KGHMI ethics committee on January 12, 2022.

    b.    January 13, 2022: Complaint to KGHMI ethics committee disclosed, "The emotional distress in coping with the behavior and the lack of support I received for reporting the behavior greatly affected my performance and health. I continue to struggle with anxiety as I have to work in an environment still frequented by Melissa Jetson and Jim Biggs" and, "Upon further being pressured to leave my current role and the effect of working in a hostile work environment, I left and Vicki Mills was put in charge of my previous responsibilities." A follow-up meeting to this complaint was canceled. I never heard from anyone again. No accommodation or path for treatment was provided.

    c.    August 12, 2022: Complaint to KGHMI ethics committee disclosed, "We recently had training on legal aspects and liability. It gave me anxiety as many of the things that companies should never do to their employees was done to me." Never heard from anyone about the complaint, No accommodation or path for treatment was provided.

    d.    June 27, 2023: Disclosed to  Sarah Ferguson (Parson Behle Lattimer) that my mental health had deteriorated significantly when the May 5, 2020 complaint was written and that it was 100% due to the work environment. No accommodation or path for

gg

treatment was offered by Robinson.

e. July 2, 2023: In the comments of information I provided to Sarah Ferguson (Parson Behle Lattimer), "I had to deal with anxiety, lack of sleep, and paranoia for weeks before I started feeling better." No accommodation or path for treatment was provided.

f. July 14, 2023: Verbally disclosed to Jason Hirt my paranoia and anxiety from participation in the internal investigation. No indication it was reported. I was not offered accommodation or a path for treatment.

g. July 19, 2023: Told my boss via text, "not only did she threaten me but she lied about it too. I would not feel safe coming into work on Tuesday." No concern at all was given to my wellbeing. I was not offered accommodation.

h. July 20, 2023: In a complaint written to Darek Huebner, "I am beginning to feel unsafe working here." No concern was given to my wellbeing, and no response was ever received.

i. July 23, 2023: In written email to ethics committee I wrote, "I am starting to fear for my safety especially if these employees are aware that I know. Please send an email confirming receipt. I will seek the advice of counsel soon. I am going to hunker down in my house till I hear more information." And in body of complaint, "Due to the seriousness of these allegations and the fact that it was unclear whether Heather's threat included bodily harm, I feel unsafe at work and won't be showing up until I feel confident protections are in place for me." No email receipt was sent. Two days later I discovered what looked like someone waiting in their car for me to leave. I stared at them and was about to go talk with them when they sped off. 10 minutes later I heard from John Haynes (member of the KGHMI ethics committee).

j. July 25, 2023: Told John Haynes via text, "Hey, John. I'm a bit of a nervous wreck right now. Might head to the clinic. Just need a little time. Maybe this evening?" I never let him know when a good time to talk was. That night there were two loud disruptive noises outside my house. My phone blew up with text messages, calls, and

voicemails immediately on stepping out of bed the following morning. I went to the clinic to try and get medication. I was not able to get in.

**k.**    July 26, 2023: I was admitted to hospital.

**l.**    July 27, 2023: I was fired in the ambulance after telling John I would cooperate with the investigation with counsel present. I was diagnosed with Generalized Anxiety Disorder immediately following my termination.

**11. Examples of Differential Treatment of Men vs. Women:** The following are examples of men being targeted unfairly and women that were given preferential treatment.

**a.**    Sterling Cook: He gave me his full support when I submitted the January, 2022 complaint. Management at Robinson told him after, "Robinson survives on cliques." Refused to engage in unethical behavior. Sometime after, he was accused of discrimination against women. Complaint was immediately substantiated, and he was disciplined. Resigned after being retaliated against for months by management.

**b.**    Logan Clark: He was having significant conflict with Bridgette Miller and Emily Willard. Told HR in his exit interview they were the reason for his departure. No disciplinary action was taken.

**c.**    Brett Wagers: I was on the receiving end of pervasive harassment from women for years. Management ignored my complaints. When an anonymous complaint was made against me accusing me of discrimination against women, it was not disclosed to me. A month prior to the complaint, I had complained about Melissa defaming me. Management did not investigate who submitted a malicious complaint against me.

**d.**    Mark Beres: All negative documents concerning my termination had Mark Beres name on it in my personnel file. There was no evidence in my personnel file to back up Mark's assertions. There was no evidence of involvement of the women in management for my termination.

**e.**    Other Men: I know significant details about the targeting of several other men by management. The details came from multiple sources. I will not disclose the details at

this time to protect my sources.

**f.**    Emily Willard: Pervasively harassed and targeted several individuals at work. Her behavior was constantly reported and ignored by management. Several individuals told me they were suffering mental health issues due to her behavior. She wasn't fired until Heather Gloeckner got involved.

**g.**    Jessica Hurst: Sources told me Jessica and Amanda Hilton were good friends and regularly did yoga together. I have heard from multiple people there have been several serious complaints about Jessica's behavior. No action was ever taken.

**h.**    Bridgette Miller: I watched her receive promotions after accusing Sterling of discrimination. I was regularly informed of behavioral problems from Bridgette. Bridgette was one of the key reasons Logan Clark left.

**i.**    Melissa Jetson: Melissa was allowed to pervasively harass me to advance her career. Documents were created attacking my character and competence. She was allowed to distribute them to management without fear. She told Joe Haskell her opinion that I hated women. I had two incidents with her that involved workplace violence and heard about others. No disciplinary action was ever taken.

**j.**    Heather Gloeckner: Heather was given the interim Chief Geologist position after Sterling left over me. She did not have the appropriate level of experience or tenure for the job. They created another Chief Geologist position since she wasn't qualified. Claimed I engaged in threatening behavior, yelled at her, and ambushed her. Management substantiated her claims and never contacted me for my side.**CLAIMS**

**First Claim**

(Name the law or right violated:_Civil Rights act of 1964 Title VII (Discrimination: Sex)& NRS 613.330) (Name the defendants who violated it: Robinson Nevada Mining Company ) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed.  You do not need to make legal arguments. You can refer back to your statement of facts.]

**12. Prima Facie Elements:** The prima facie elements required to prove Discrimination due

to Sex are as follows; Membership in the Protected Class, Adverse Employment Action, Qualification for the Position, and Comparison to Similarly Situated Individuals.

a. I am a Male. The adverse employment actions related to my sex are under section 8.b, 8.c, 8.d, 8.e, 8.g, and 8.h.  Two involve the stripping of my responsibilities that were given to women. Both reassignments occurred after defamatory claims were made by women. One of the claims accused me of discrimination against women and was hidden from me by management.  Another adverse action involves being blindsided with negative feedback in my performance review. I believe the feedback and the pressure to include it in my review came from women.  Two involve the promotion of Heather Gloeckner to interim Chief and then the creation of another Chief position due to her lack of qualifications for the Interim position, and the last is my termination after Heather's allegations were substantiated without my chance for rebuttal on July 27, 2023. Her false claims made me look like a stereotypical sexist man.

b. Many of these adverse employment actions fall outside the statute of limitations and would therefore be "time-barred." I will contend they should be included due to the continuing violation doctrine. Also, the claim that I discriminated against women was made in October, 2021 and is what I believe one of the most significant incidents of pervasive harassment due to my sex. Evidence will show Robinson management did not disclose this complaint until 300 days past the adverse employment action. I discovered the incriminating evidence on June 27, 2023, within the statute of limitations. Existing case law makes it clear that the statute of limitations should be tolled when the employer deliberately hides incriminating evidence. The discovery rule therefore applies, and the adverse action related to the complaint and those before it should be admitted. I will also contend that there was a hostile work environment that involved pervasive harassment due to my sex (section 7). The first written complaint that highlighted the hostile work environment occurred on May 5, 2020 and persisted till my termination.

**c.**    I was qualified for all positions. My academic background and tenure made me a qualified candidate for the Chief Geologist position as evidence will prove. All my performance reviews were fully successful, and I had never been on a performance improvement plan.

**d.**    Section 11 shows the glaring disparity between how men were treated and how women were treated. Men could have their careers and character destroyed by complaints from women that were substantiated immediately. The women that made these claims if beneficial to managements goals, were protected and given special treatment. Legitimate complaints about pervasive harassment from women fell on deaf ears and weren't investigated impartially. Company policy was ignored concerning complaints against women. Management stripped responsibilities from men and gave them to women without a clear divide in qualifications. Also, when opportunities for promotions were available, less qualified women were chosen as evidenced by Heather Gloeckner's elevation to a Chief.

**e.**    I am contending gross negligence with my former employer's obligations under The Civil Rights Act of 1964 Title VII. I withstood 3 years of pervasive harassment from women due to my sex that created a hostile work environment. The pervasive harassment and lack of support caused severe emotional distress and held back my career significantly. I may never be able to work in a high paying mining job again due to the inaction of my employer and the steps I had to take for accountability. The fact so many complaints were made and ignored by management at the highest levels shows a reckless disregard for the well-being of their employees that are being discriminated against. Serious questions need to be asked why a company would go to such extreme levels to protect management staff that recklessly violated the civil rights of its employees.

**Second Claim**

(Name the law or right violated: Civil Rights act of 1964 Title VII (Retaliation: Opposition & Participation) and NRS 613.340) (Name the defendants who violated it: Robinson Nevada Mining

Company, Mark Beres II, and John Haynes) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed.  You do not need to make legal arguments. You can refer back to your statement of facts.]

**13. Prima Facie Elements:** The prima facie elements required to prove retaliation are engagement in protected activity, an adverse employment action, and causal connection.

    **a.**    State law allows for defendants to be personally liable for retaliation. Mark Beres and Robinson management were explicitly warned during liability training of this fact. My complaint will likely be amended to serve other defendants in this case for retaliation. Anonymous sources with false claims were used in the EEOC respondent statement to protect them from litigation. Management, however, only implicated Mark Beres with the evidence they provided in my file. John Haynes implicated himself with the actions he took in response to my whistleblower complaint as a member of the KGHMI ethics committee.

    **b.**    Section 9 highlights 18 acts of protected activity. My employer will claim that many of the complaints highlighting continued harassment are not protected because I did not explicitly state that the harassment was due to my sex. Existing case law would disagree, and our company policy explicitly states what I described as workplace harassment. The anonymous complaint under 7.g destroys this narrative and highlights that the pervasive harassment was due to my sex. All prior complaints highlighting the behavior are protected activity under existing case law. It is not surprising that management hid this complaint to hide the discrimination. Management believed waiting 300 days past the adverse employment action for disclosure would absolve them of the liability.

    **c.**    I believe the adverse employment actions under 8.a, 8.c, 8.e, 8.f, 8.g, and 8.h highlight retaliation in response to protected activity. Many of these would be time-barred except for the fact that the retaliation was part of a continuing pattern that created a hostile work environment. Management continually engaged in unwelcome behavior involving retaliation which was reported in complaints. Jaime Cogley

labeled me as having, "poor leadership skills" and ostracized me despite not having any comments on performance reviews about my leadership or providing objective evidence to show I failed to meet the qualifications. Good policy would be to interview qualified internal candidates valued by the company, even if they may be lacking some key qualifications. I doubt management will be able to produce a list of the qualifications they felt I failed to meet when I applied for this position. Jaime's behavior highlights management's policy to label anyone that submits complaints as having poor leadership skills or performance and to exclude them from promotion consideration. A clear act of retaliation. Another part of that pattern was to blindside me with a negative performance review deliberately (8.c). The other adverse actions highlight Heather's promotion over me for positions she was less qualified for. Evidence will be provided of Mark Beres fabricating reasons and changing goal posts to legitimize refusing to interview me for a promotion. He also solicited me for a meeting after applying to bully and intimidate (8.f). The facts will also show the KGHMI ethics committee and Robinson management did not follow proper procedures after my complaint alleging retaliation from Mark Beres and fraudulently concealed information that proved retaliation. The last and final adverse action was my termination which occurred after multiple managers came forward with dubious claims to retaliate. Even though I was the only one explicitly threatened, speculation was used to substantiate that I was a threat to others. The claims under 13.g also show how hostile the work environment was immediately following protected activity.

    **d.**    To lay the groundwork for causal connection, I will contend that I engaged in multiple acts of protected activity in the weeks just prior to my termination. A clear causal connection. 9.k, 9.l, 9.m, 9.n, 9.o, and 9.p. The first was my participation in the internal investigation by Parson Behle and Latimer. I believe the results of that investigation showed management sanctioned discrimination and retaliation. The investigation also showed I was the victim of pervasive harassment due to my sex that management covered for. My participation in providing key evidence likely enraged

management.

e. The next significant incident was witnessing potential discriminatory conduct from Joe Haskel. Who is a repeat offender of discrimination. I reported his behavior to his boss Heather Gloeckner. I discovered Heather was going to cover the behavior up and use a false narrative to blame me. Reported the retaliation to multiple individuals and the threat she made. I was never contacted to be part of the investigative process and believe all management was ordered to ignore me.

f. The last act of protected activity was blowing the whistle on what looked like a civil conspiracy and the potential for criminal activity after talking to multiple sources. The complaint also highlighted circumstantial evidence of management sanctioning discrimination and retaliation.

g. The following events occurred in order after blowing the whistle; Complete silence and lack of response from KGHMI ethics committee for two days, witnessing a car parked and ready to follow me upon leaving my house, heard from John Haynes 10 minutes after the car sped off, telling John Haynes I was a nervous wreck and needed time for treatment, two loud disruptive noises outside my house spaced hours apart in the middle of the night, the KGHMI ethics committee blowing up my phone as soon as I stepped out of bed, the feeling I was under surveillance, witnessed a car parked outside my bedroom window in unusual location, went to clinic and unable to secure treatment, talked to KGHMI ethics committee at 11:00 am, no concern was given about my wellbeing and they only wanted me to reveal information, told them I would cooperate with counsel present, hung up after continued harassment for information, text messages that looked to have malicious links, parents landline blowing up when hiding out, friends at the mine reaching out for information. I could not control the anxiety and paranoia. I was hospitalized on the night of the 26th. Fired in the ambulance on the way to a mental health facility on the 27th. I was fired shortly after reiterating to John Haynes with my intent to obtain counsel before participating. It is unclear if my employer had any involvement in these events.

**h.** The pretext for my termination was workplace performance and the deterioration of workplace relationships. My last day working at Robinson was July 18, 2023. I had a mid-year performance review with Jason Hirt on July 14, 2023. There were no negative comments concerning my performance. All signed performance reviews were fully successful with positive comments. The negative comments on my mid-year review in 2021, were refuted in the year-end by Sterling Cook as he was present to witness the abuse. I have never been on a performance improvement plan.

**i.** After reviewing the respondent statement provided to the EEOC, I witnessed negative comments concerning my performance that were added to my file after the fact. Witnesses with mining experience will be able to determine the claims as malicious falsehoods. Especially considering the performance event was never communicated to me and other employees in similar positions committed far worse acts with no penalty. These performance events were also not in my personnel file after termination. There is either a secret file or they added it after. Both of which are highly unethical and potentially illegal.

**j.** The entire management team appeared to be retaliating. Claiming I had deteriorating workplace relationships after engaging in acts of protected activity is the literal definition of retaliation. Relationships that deteriorated after engaging in protected activity is an illegal reason for termination. The above information destroys the pretext for my termination.

**k.** Mark Beres and John Haynes need to be held personally accountable for the malicious nature of their retaliation. Mark Beres signed the termination notice, put a false pretext and illegal reason for the termination, and checked the box ensuring I could never be reconsidered for employment at Robinson. I had to put the false pretext on all my employment applications and had opportunities fall through at the end after explaining the true reasons I was fired. Nobody wants to hire someone perceived as a complainer.

**l.** Both Mark Beres and John Haynes still work for KGHMI, which shows a reckless

disregard for abiding by company policy surrounding whistleblowers and retaliation. The only one that lost their job was the whistleblower. There was emotional distress for the continuing violations of company policy, disregard for my well-being, and the malicious nature of the retaliation.

## Third Claim

(Name the law or right violated: Americans with Disabilities Act (ADA) and NRS 613.330) (Name the defendants who violated it: Robinson Nevada Mining Company) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments.

14. **Prima Facie Elements:** The prima facie elements required to prove discrimination under the ADA include; Having an ADA protected disability, Qualified for the role w/ or w/o accommodation, Adverse employment action, and circumstances of adverse action relating to disability discrimination.

a.    I was diagnosed with Generalized Anxiety Disorder (GAD) by Desert Parkway Behavioral Hospital and CoreMental Health after my termination. GAD is protected under the ADA. I likely developed GAD in March, 2020 due to the work environment and progressed to become more severe due to the company response and continued behavior.

b.    Despite significant flare ups of my disability, I was still able to perform all duties as assigned. All my performance reviews were fully successful.

c.    The adverse employment actions can be seen in section 10 when my employer completely ignored communication concerning flare ups of my disability due to the work environment. There are 10 disclosures in complaints of the symptoms of my disability. Investigations didn't appear to take place, no follow-up occurred, and I wasn't offered a link to the EAP so I could get help. During the disclosure at 10.a, I asked to be removed from the situation or have an investigation decide. I was told there was nothing actionable in the complaint and made to feel like I was

overreacting. The above facts show gross negligence in fulfilling their obligations under the ADA to offer accommodation. There were three years of disclosures that warranted an interactive process. Adverse employment actions occur when my employer failed to fulfill their ADA obligations and thus discriminated against me. The continuing violation doctrine would be very applicable to all adverse actions outside the statute of limitations.

d. The last adverse action is my termination. In the verbiage of the respondent statement sent to the EEOC, part of the reason for my termination was the safety of other employees. The ADA is clear, termination of an employee for direct threat to safety can only occur if both of the following are true; harm must be significantly likely to occur, and the amount of potential harm must be substantial. My employer's evidence is text messages taken out of context, a he said/she said argument, and shaking hands. No implicit or explicit threats were made. The text message stated, "really doesn't feel safe" and is in reference to Heather threatening me. They snipped the text message in the exhibit that explains my reasoning. The shaking hands and feelings of being unsafe were a direct result of a significant flare up of my disability. I was never contacted to provide this context and shows managements intention to continue discriminating due to my ADA protected disability. The circumstances make me believe management got pleasure out of antagonizing me and ignoring me.

e. The KGHMI ethics committee was also very aware of my anxiety issues, and I communicated as much via text to John Haynes (10.j). The initial lack of response and harassment I faced from them after blowing the whistle shows a reckless disregard for my well-being and perhaps the intentional infliction of emotional distress.

f. The evidence in the paragraphs above clearly demonstrates the circumstances of adverse actions taken are in relation to my ADA protected disability. I made disclosures of my disability to Robinson management, the KGHMI ethics committee, and the internal investigators. Zero concern was given to my well-being. I will likely

have to live with elevated anxiety and paranoia for the rest of my life due to the company's response. I no longer enjoy activities that are high risk due to fear of a deliberate accident. The life of a whistleblower that was intimidated is not glamorous, but I would do it all again to root out corruption for the betterment of humanity.

## Fourth Claim

(Name the law or right violated Family and Medical Leave Act (FMLA)) (Name the defendants who violated it: Robinson Nevada Mining Company) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer back to your statement of facts.]

**15. To prove an FMLA violation occurred, I need to provide evidence of employment of longer than a year, that I had a qualifying medical emergency, and that I gave my employer notice of a potential FMLA need.**

**a.** I was employed at Robinson Nevada Mining Company from January, 2011 – July 27, 2023. Well past the required year.

**b.** I was admitted to the ER at William Bee Ririe Hospital on July 26, 2023 for a mental health emergency and transferred to Desert Parkway Behavioral Hospital the next day via ambulance.

**c.** Section 10 clearly indicates Robinson's and KGHMI's knowledge of my disability due to dozens of disclosures. All of them were ignored. I began suffering a mental health crisis upon discovery of a termination setup on July 18, 2023. Sections (10.g-j) indicate how many times I communicated safety and anxiety issues to HR, management, and the KGHMI ethics committee. I communicated I was suffering mental health issues via text which they acknowledged. I also told Jake Hirt, my boss, that I needed to take time off due to feeling unsafe. He was aware of my issues with paranoia and anxiety. At no time did they disclose my FMLA rights due to my mental health emergency. Instead, I was subjected to what I believe was the weaponization of my disability to cause hospitalization (13.g) and eventually interfered with my

FMLA rights by terminating mid-crisis. I am not required by law to explicitly state my desire for FMLA leave. I am also not required to follow FMLA company handbook guidelines during extraordinary circumstances, which certainly applies here. I was not in a mental state capable of requesting leave from HR. This is a clear violation of my FMLA rights via interference and/or retaliation.

### Fifth Claim

(Name the law or right violated Common Law Tort under Intention Infliction of Emotional Distress in relation to ADA discrimination) (Name the defendants who violated it: Robinson Nevada Mining Company and John Haynes) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed.  You do not need to make legal arguments. You can refer back to your statement of facts.]

**16. To prove Intentional Infliction of Emotional Distress (IIED), you must show extreme and outrageous behavior, intent, severe emotional distress, and causation.**

a.    The events under 13.g, while circumstantial, would qualify as extreme and outrageous behavior if my employer were responsible. I would argue the continued harassing phone calls, texts, and voicemails that can be tied to them are also evidence. My termination by John Haynes while in the ambulance is also extreme and outrageous. Especially after disclosing I was willing to cooperate with counsel present.

b.    My disclosures in section 10 of my disability show advance knowledge of my issues with anxiety. I have also recently discovered evidence of their intent to make me look crazy instead of investigating. John Haynes was aware of my disability as a member of the ethics committee.

c.    The severe emotional distress is the easiest to prove via my medical records. My admittance to the ER at William Bee Ririe, the medical records tied to my ambulance ride and continued harassing phone calls, my admittance to Desert Parkway Behavioral Hospital, and my continued visits for therapy and psychiatry show severe emotional distress has occurred due to what happened.

**d.**   None of the hospitalization would have occurred if the company took steps to make me feel safe, waited for treatment, and taken the appropriate steps to investigate all my claims that were made in good faith. John Haynes played the largest part in my IIED claim.

## Sixth Claim

(Name the law or right violated Common Law Tort under Defamation of Character) (Name the defendants who violated it: Robinson Nevada Mining Company, Jane Doe, and Mark Beres) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed.  You do not need to make legal arguments. You can refer back to your statement of facts.]

**17. To prove defamation of character, you must show a false statement of fact, identification, harm, fault, and unprivileged. It is very likely that others will be added to this suit after discovery. The respondent statement to the EEOC had significant false claims from individuals hiding behind anonymity. Also, I still do not know the identity of the individual that claimed I discriminated against women.**

**a.**   The false statement of facts would include that I was fired for "performance issues" and that I "discriminated against women". My poor performance was listed as a reason for termination and came from Mark Beres, not my boss Jason Hirt. I had a mid-year performance review on July 14, 2023 with Jason Hirt, four days before my last day worked. There were no negative comments concerning my performance. In the respondent statement to the EEOC, they also added a performance incident that was not in the original personnel file given to me nor communicated with me prior to termination. Mark Beres also defamed me by providing false statements of fact concerning my experience to management. These statements were used to deny me the opportunity to interview for a promotion. There were several statements made that were objectively false upon inspection of my submitted resume. Management fraudulently concealed these statements from me and only revealed them during the EEOC investigation in July 2024. Concerning the claim that I discriminated against

women, I never found the identity of the individual for the complaint and the company never followed up with me concerning the results of the internal investigation on June 27, 2023. I do not know if the company substantiated the claims or not, but I do know the complaint occurred at the same time as an adverse employment action. Jane Doe will be named as a placeholder until the identity of the complainant can be ascertained. It was clear from the internal investigation the complaint was submitted in bad faith and an investigation to identify them should have been performed according to company policy.

**b.** My name was identified on the termination form indicating I was a poor performer, I was the identified applicant on the form with false statements about my experience, and I was the accused in the complaint concerning discrimination against women.

**c.** All mining employment applications ask if I was terminated and for what reasons. I have had to put comments concerning poor performance on all of them, despite knowing it was false. I had a job fall through at the last moment after explaining the true reasons for termination. I was perceived as a problem employee. Nevada Gold applications ask if I have ever been accused of a civil rights violation. I lied in my desperation to find a job. I would have to continue lying or check the box yes to tell the truth. I deserve to know the results of the investigation and why they didn't investigate to determine who submitted a false malicious complaint attacking my character if it was unsubstantiated. The false statements about my experience were used to deny me an interview for a promotion which caused significant harm to my career.

**d.** Concerning fault,  these claims I believe were made because the individuals were under the assumption the company would cover them. Unfortunately for Mark, it appears management decided to throw him under the bus and did not provide a single piece of evidence in my personnel file backing his assertions that I was a poor performer. The false claim of performance issues was to hide retaliation. Hence why Mark Beres signed the termination form, and Jason Hirt my boss did not. The claim I

discriminated against women was a part of a pattern that I complained about for years. I complained to HR just a month prior about defamation from Melissa Jetson. She has made other significant false claims to smear me and advance her career. It is no wonder they hid the complaint. Mark Beres also showed no concern at all for objectively evaluating my application as my resume highlights the falsehoods he listed.

e.    These claims are unprivileged as I am compelled to disclose them under threat of having an employment application immediately discarded Qualified privilege should also be waived concerning my experience notes as the false comments were numerous, done with malice, and fraudulently concealed.

**Seventh Claim**

(Name the law or right violated: Hostile work environment involving ADA discrimination, sex discrimination, and retaliation under Title VII) (Name the defendants who violated it: Robinson Nevada Mining Company) [Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed.  You do not need to make legal arguments. You can refer back to your statement of facts.]

**18. The prima facie elements required to prove a hostile work environment involving discrimination and retaliation include: Engagement in a protected activity or member of a protected class, unwelcome conduct, causal connection or based on protected characteristic, severe or pervasive, and employer liability.**

a.    I was diagnosed with a disability immediately following my termination on 7/27/23 (10.l). My disability would likely have been diagnosed as early as May of 2020 if Robinson had not discriminated against me by failing to engage in an interactive process after an ADA qualifying disability disclosure. (10.a) I am also Male. I was the victim of sex-based harassment that was ignored after complaints. Retaliatory harassment after complaints was also ignored when disclosed. (7.a-g) Section 9 details 18 acts of protected activity over the course of three years of employment.

**b.** The unwelcome conduct can clearly be seen in section 7. Workplace violence, defamation, presentations attacking our department being sent to management unknowingly, and just prior to termination, claims from a female manager that falsely painted me as a stereotypical sexist man.  The unwelcome retaliatory or discriminatory conduct from management included labeling me with, "a lack of leadership skills" (8.a) without objective examples, blindsiding me with negative feedback on a mid-year performance review (8.c), bullying and intimidating me after denying me a chance to interview (8.f), verbally threatening me if I reported behavior to HR (9.m), and harassing me for information and to reveal sources after blowing the whistle and disclosing I felt unsafe at work. (13.g)

**c.** All the unwelcome behavior from management retaliating can be causally tied to protected activity disclosed in section 9. Management did not provide any objective evidence to support their comments concerning my qualifications or performance. They used subjective pretexts to hide retaliation. The pervasive workplace harassment can be tied to my sex and disability (section 7 & 10). The harassing calls/text and events I witnessed caused someone suffering a mental health issue to spiral. Not a single question was asked to assess my well being after all my written concerns about my safety. Management didn't care because of my sex, engagement in protected activity, and to prevent my disability diagnosis while employed.

**d.** My medical records will show beyond a reasonable doubt the unwelcome conduct was severe and pervasive. A mental health impairment that forms as a direct result of a hostile work environment is evidence enough. Having to be admitted to the ER takes it to another level. The hostile work environment can be proven subjectively and objectively from written complaints. (9.b,f)

**e.** Employer liability is the easiest to prove. Section 9 & 10 show dozens of acts of protected activity in which my employer took no action and did not follow company policy concerning complaints. The hostile work environment persisted until my termination. The work environment was so hostile that every manager in tech services

participated in coming forward with dubious claims to help management retaliate. Text messages and objective evidence prove they are lying. The complete lack of response to disclosures about my safety also show a reckless disregard for those suffering from a disability. Management twisted my words and symptoms of my disability to make me look like a violent hazard in the workplace. The ADA makes it clear. Speculation about potential workplace safety concerns is not allowed. The continuing violation doctrine should allow the earlier adverse actions of retaliation and discrimination to be included outside the statute of limitations due to a continuation of a hostile work environment tied to my sex, disability, and retaliation.

## DEMAND FOR RELIEF

[State what you want the Court to do. Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something. If you are asking for money, you can say how much you are asking for and why you should get that amount, or describe the different kinds of harm caused by the defendant.]

**18. My demand for relief will be financial. I had communicated multiple times in my complaints that I wasn't interested in money and would absolve the company of liability if they stepped in and did the right thing. Having to take my case this far no longer makes that an option. The state statute under NRS 613.432 for violations of NRS 613.330 and 613.340 should also be assessed in addition to the federal violations.**

a.    Back Pay – 8 months of pay while I was out of work. Considering the continuing violations from retaliation, I will contend that the pay should be at the compensation amount of a Chief Geologist in March of 2021. I was on unemployment insurance most of the time which clearly demonstrates an active work search history. I should also receive back pay for the disparity in compensation for a Chief Geologist from March 2021 – July 27, 2023.

b.    Front Pay – The pay disparity between my current job and my former job is significant. I must stay so many years in federal service to obtain time-linked

benefits. I will likely stay at least 3 years to receive competitive status benefits.

Considering the malicious nature of the false claims, my desire to potentially unionize Robinson, my desire to stay in Ely to take care of aging parents, and the harmful nature of taking litigation to your employer, I will never work a high paying mining job again. Front Pay like Back Pay should be calculated according to the Chief Geologist's compensation due to retaliation.

c.   Emotional Distress – Damages for emotional distress should be assessed. The refusal to follow company policy concerning complaints, the reckless disregard for my well-being, my hospitalization and humiliation for having a mental breakdown, the complete lack of support after engaging in protected activity, continually being subjected to a hostile work environment, and the distress of being out of work for 8 months.

d.   Liquidated Damages – Liquidated damages should be assessed for the FMLA violations.

e.   Medical Expenses – I had over $30,000 dollars in medical expenses related to my hospitalization, paying insurance out of pocket, medications, and therapy. I expect that number to continue growing.

f.   Pain and Suffering – Pain and suffering should be assessed for the medical treatment required.

g.   Punitive Damages – The number of men that were targeted with false and exaggerated complaints should meet the requirements for punitive damages to be asseshhsed. The company's gross negligence in fulfilling their obligations under the Civil Rights Act of 1964 Title VII and the Americans with Disabilities Act should not be taken lightly. Even when the parent company became aware of the violations, they continued to look the other way instead of investigating. The gross negligence goes all the way to the top of the company. This behavior warrants punitive damages under federal law (with caps) and Nevada's NRS 42.005, due to malice and gross negligence.

**h.**  Attorney Fees – I paid for half a dozen or more consultations. I should receive compensation for having to do so. If I retain an attorney for this case, those fees will also apply.

**i.**  Travel and Lodging for Medical – Most of my treatments were in Las Vegas that required travel and lodging expenses.

**j.**  Lost Deposits for Family Emergency – My family lost significant money attributed to a trip that had to be canceled due to my medical emergency. Due to my employer's negligence, they should pay for that cost.

### DEMAND FOR JURY TRIAL

*[Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.]*

☒ Plaintiff demands a jury trial on all issues.

Respectfully Submitted,

Date: 6/11/2025          Sign Name: *Brett Wagers*

Print Name: Brett Wagers