UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRETT WAGERS,

　　　　　　　　　　　　Plaintiff,

　　v.

ROBINSON NEVADA
MINING COMPANY, *et al.*,

　　　　　　　　　　　　Defendants.

3:25-cv-00055-MMD-CLB

ORDER

## I.    SUMMARY

*Pro se* Plaintiff Brett Wagers sued Defendants Robinson Nevada Mining Company ("Robinson"), Mark Beres II, and John Haynes for events arising out of his employment with Robinson. (ECF No. 35 (Second Amended Complaint ("SAC")).) Before the Court is Defendants' motion to dismiss. (ECF No. 36 ("Motion").)[1] For the reasons explained below, the Court will grant the Motion in part and deny it in part.

## II.    BACKGROUND

The following allegations are adapted from the SAC. Plaintiff was employed with Robinson as a Senior Geologist from January 2011 to July 2023 when his employment was terminated. (ECF No. 35 at 3.) Plaintiff alleges he was subject to "pervasive harassment due to his sex from several women co-workers" from February 2020 to when his employment ended. (*Id.* at 3-5.) Plaintiff identified a series of "adverse employment actions" from March 16, 2021 until his termination taken due to his sex, disability, and for filing complaints, including twice being "denied an interview for the Chief Geologist position despite being an internally qualified candidate and forced reassignment of responsibilities. (*Id.* at 5-7.) He alleges that the reasons given for his employment termination relating to "workplace performances and workplace relationships" were

---

[1]Plaintiff filed a response (ECF No. 40), and Defendants replied (ECF No. 44).

pretext and that he was "having an anxiety attack" when allegations were made that he "engaged in threatening behavior. (*Id.* at 6-7.)

Plaintiff initiated this action on January 27, 2025. (ECF No. 1.) The SAC alleges seven claims for relief: (1) discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII")  and NRS § 613.330; (2) retaliation in violation of Title VII and NRS § 613.340; (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 and NRS § 613.330; (4) violation of his rights under the Family Medical Leave Act ("FMLA"); (5) intentional infliction of emotion distress; (6) defamation;  and (7) hostile work environment based on the alleged discrimination and retaliation. (*Id.* at 14-29.)

## III.    DISCUSSION

Defendants move to dismiss all claims on numerous grounds under Federal Rule of Civil Procedure 12(b)(6). The Court will address each ground in turn. But the Court begins first with the standard governing Defendants' Motion.

### A.  Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to

draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

Mindful of the fact that "[t]he Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of *pro se* litigants," the Court will view Wager's pleadings with the appropriate degree of leniency. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982)).

Viewed under this standard, the Court declines to consider factual allegations in the Motion to the extent they invite inferences to be drawn in Defendants' favor. Take for example the allegations as to Plaintiff's employment termination. Defendants cite to allegations in the SAC to assert that Plaintiff admits that at the time of his termination, he had received negative feedback from his male supervisors. (ECF No. 36 at 11.) But in the SAC, Plaintiff makes several allegations that he disputes the reasons given for his termination (ECF No. 35 at 6-7, ¶ 8(h)), and that he was not informed of any performance issues and in fact alleges that his "signed performance reviews were fully successful with positive comments." (*Id.* at 20, ¶ 13(h).) Another example relates to allegations about Plaintiff's application for promotion to the Chief Geologist position. Defendants assert that Robinson did not promote Wagers to the Chief Geologist position "because he lacked the necessary qualifications for the position." (ECF No. 36 at 3.) Defendants quote the SAC, claiming Plaintiff alleges that "Defendant Mark Beres specifically told him in August of 2022 that he was not interviewed because '[he] used to be an all star performer but wasn't anymore.'" (*Id.*) However, Defendants ignore the preceding part of this sentence—Plaintiff alleges Beres "disclosed several false reasons I wouldn't be interviewed and told me I used to be an all star performer but wasn't anymore." (ECF No. 35 at 6.) Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff contends the reasons given about his lack of qualifications were false.

Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907-08

3

(9th Cir. 2003). There are three exceptions to this rule: (1) a court may consider documents "'properly submitted as part of the complaint' on a motion to dismiss;" (2) if "documents are not physically attached to the complaint," incorporation by reference is proper "'if the documents' authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them," *Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)); and (3) "a court may take judicial notice of 'matters of public record.'" *Id.* (quoting *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). The latter two exceptions apply to Exhibits 3 (ECF No. 36-3 ("the Charge")) and 4 (ECF No. 36-4) to the Motion as they relate to the charge of discrimination that Plaintiff filed with the U.S. Equal Employment Opportunity Commission (EEOC), which Plaintiff referenced in the SAC (ECF No. 35 at 22, 25) and does not dispute (ECF No. 40 at 7, 11).

### B. Time-Barred Allegations

Defendants argue that Title VII and ADA claims based on alleged adverse actions taken outside of the limitations period should be barred. (ECF No. 36 at 6-8.) A plaintiff timely files a charge with the EEOC if the charge is filed "within 180 days from the last act of alleged discrimination" or, in a state like Nevada that has its own local agency, within 300 days of the last discriminatory act.[2] *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175 (9th Cir. 1999). Here, Plaintiff filed his charge with the EEOC and the Nevada Equal Rights Commission ("NERC") on February 7, 2024. (ECF No 36-3.) Defendants thus argue that only alleged actions taken after April 13, 2023 are within the 300 day period. Plaintiff "concede(s) that the statute of limitations starts on April 13, 2023

---

[2]Exhaustion of administrative remedies is a prerequisite to adjudication of claims for discrimination under Title VII and the ADA. *See Josephs v. Pac. Bell*, 443 F.3d 1050, 1061 (9th Cir. 2006) (a plaintiff must file administrative charge before filing ADA suit); *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) ("a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim"). Exhaustion requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge. *See* 42 U.S.C. §§ 2000ff-6, 12117(a); 29 U.S.C. § 626(d).

concerning discrete adverse employment actions" but he argues that these earlier actions support his claim of hostile work environment.[3] (ECF No. 40 at 9-10.)

The Court generally agrees with Defendants. As Plaintiff admits, he alleges "discrete adverse employment actions." (*Id.*) "A discrete act of discrimination is an act that in itself constitutes a separate actionable unlawful employment practice and that is temporally distinct." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 638 (2007) (internal quotations and citation omitted), *superseded by* statute, Pub. L. No. 111-2, 123 Stat. 5. "The existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Nat'l R.R Passengers Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Pouncil v. Tilton*, 704 F.3d 568, 578–79 (9th Cir. 2012) ("*Morgan* instructs that a court must determine whether a claim is based on an independently wrongful, discrete act, and if it is, *then the claim accrues, and the statute of limitations begins to run, from the date of that discrete act, even if there was a prior, related past act.*" (emphasis added)). Because Plaintiff alleges discrete adverse employment actions—denial of the opportunities to interview for Chief Geologist position and reassignment of job responsibilities between March 2021 and September 2022 (ECF No. 35 at 5-6)—the statute of limitations begins to run from when each of those alleged actions were taken. But because Plaintiff also alleges a claim for hostile work environment based on his sex (ECF No. 35 at 27-29), the Court agrees with Plaintiff that these alleged actions fall within his claim of "alleged hostile work environment that began in early 2020 and continued until [his] termination."[4] (ECF No. 40 at 9.) Accordingly, the Title VII discrimination and

---

[3]The Court declines to consider Plaintiff's conclusory assertion of equitable tolling and fraudulent concealment. (ECF No. 40 at 10.)

[4]A series of non-discrete acts that form one unlawful employment practice can serve as the basis of a hostile work environment claim even if some of the non-discrete acts occurred outside the relevant time period. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005).

retaliation claims and the ADA discrimination claim are limited to adverse employment actions taken after April 12, 2023, such as Plaintiff's termination. Thus, the Motion is granted to the extent these claims rely on adverse employment actions taken before April 12, 2023. The Motion is denied to the extent it seeks to exclude these earlier actions from Plaintiff's hostile work environment claim.

### C. Title VII Claims Against Individual Defendants

Defendants argue that Title VII claims cannot be asserted against Defendants Beres and Haynes. (ECF No. 36 at 8.) The Court agrees.[5] *See Robinson v. Renown Reg'l Med. Ctr.*, 3:16-cv-00372-MMD-WGC, 2017 WL 2945727, at *2 (D. Nev. July 10, 2017). The Court will grant the Motion as it relates to Title VII claims against these two Defendants.

### D. Failure to Exhaust Administrative Remedies

Defendants first argue that Plaintiff failed to exhaust his administrative remedies as to his hostile work environment claim under Title VII because his EEOC charge did not include this claim. (ECF No. 36 at 8-9.) Plaintiff responds that "additional claims can be added if they are 'reasonably related' to the original charge." (ECF No. 40 at 11 (citing *Sosa v. Hiraoka,* 920 F.2d 1451 (9th Cir. 1990)).) The Court agrees with Plaintiff.

In assessing whether a claim was brought before the EEOC, "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (internal quotation marks omitted). Additionally, the district court may only hear charges that are "within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003). A plaintiff's claims are reasonably related to allegations in the charge "to

---

[5]Plaintiff acknowledges that "Title VII does not allow for personal liability against managers." (ECF No. 40 at 10.) He argues that they may be liable for other claims which the Court does not address because Defendants seek to dismiss only the Title VII claims against Defendants Beres and Haynes.

the extent that those claims are consistent with the plaintiff's original theory of the case," as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful. *B.K.B.*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002). The court construes the EEOC charges "'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading'" and "the crucial element of a charge of discrimination is the factual statement contained therein." *Id*. The purpose of the exhaustion requirement is to give the defendant notice of the plaintiff's claim, and to narrow the issues for prompt adjudication. *See id*. at 1099.

Liberally construing his allegations in the Charge, Plaintiff alleges that he "filed a complaint of harassment" against two individuals and his employer "retaliated with harassment and intimidation tactics" and he asserted "the feeling of being unsafe due to the work environment." (ECF No. 36-3 at 2-4.) Plaintiff asserts similar allegations and expands on the alleged harassment due to his sex in the SAC. His claim of alleged harassment based on sex could reasonably be within the scope of the EEOC's investigation as to his Title VII sex discrimination claim. The Court thus finds that Plaintiff has exhausted administrative remedies on his hostile work environment claim.

Defendants next argue that Plaintiff failed to exhaust his administrative remedies as to his claims for discrimination and retaliation under Nevada law because his "EEOC and NERC charge does not include discrimination or retaliation claims brought under Nevada law." (ECF No. 36 at 9.) Here, the Charge was filed with both EEOC and NERC.[6] (ECF No. 36-3.) The Charge alleges violations of Title VII and the ADA, but as Defendants

_____

[6]As Defendants point out, because "the EEOC has a 'work sharing agreement' with NERC, [] a charge may be dually filed with both agencies." (ECF No. 44 at 6.) Defendants relied on this Court's prior decision in *Duncan v. Rio Suite Hotel & Casino* where the Court found that the plaintiff failed to exhaust his administrative remedies for the Nevada discrimination claims because plaintiff failed to allege that NERC adjudicated his claims or issued a right to sue letter. (*Id.* (citing 2:12-CV-00565-MMD, 2012 WL 5818125, at *6 (D. Nev. Nov. 15, 2012)).) But *Duncan* is distinguishable because the plaintiff there filed a charge of discrimination with NERC first and later filed a separate charge of discrimination with EEOC and received a right to sue letter from the EEOC, but he did not allege he received a right to sue letter from NERC as to his NERC charge. *See* 2012 WL 5818125, at *2, *6. Here, Plaintiff did not file a separate charge with NERC.

argue, does not reference Nevada law. However, liberally construing the allegations in the Charge, the Court finds that the same allegations provide sufficient notice of claims under Nevada law because Nevada's discrimination law claims are "evaluated the same way as their federal analogs." *Bullard v. Las Vegas Valley Water Dist.*, Case No. 2:15–cv–00948–JAD–VCF, 2018 WL 715358, at *4 (D. Nev. Feb. 5, 2018) (referencing three federal schemes: Title VII, the ADA, and the Age Discrimination in Employment Act).

### E.  Sex Discrimination Claim

Defendants argue that the SAC fails to allege a plausible claim for sex discrimination under Title VII because Plaintiff failed to offer allegations to plausibly support an inference of discriminatory intent.[7] (ECF No. 36 at 11-12.) Defendants insist that Plaintiff "admits" that women in management were not involved in is termination and that he had received negative feedback from male supervisors. (*Id.* at 11 (citing ECF No. 35 at ¶¶ 11(d), 12(a)).) Plaintiff responds that Defendants "cherrypicked" allegations from his SAC and take them out of context. (ECF No. 40 at 12.)

Viewed under Rule 12(b)(6) standard, the SAC plausibly alleges discriminatory intent. In ¶ 11(d) of the SAC, Plaintiff states:

> Mark Beres: All negative documents concerning my termination had Mark Beres name on it in my personnel file. There was no evidence in my personnel file to back up Mark's assertions. There was no evidence of involvement of the women in management for my termination.

(ECF No. 35 at 13.) Paragraph 8(a) alleges that Plaintiff was "blindsided with negative feedback in [his] performance review" and "believe[d] that the feedback and the pressure to include it in [his] review came from women." (ECF No. 35 at 15.) Plaintiff further alleges that one such "feedback" relates to his "termination after Heather's allegations were substantiated without my chance for rebuttal on July 27, 2023 . . . Her false claims made me look like a stereotypical sexist man." (*Id.*) The SAC alleges that Plaintiff's "employment was terminated after engaging in multiple acts of protected activity in the weeks prior," that "reasons given for termination were workplace performance and workplace

---

[7]Because the Court agrees with Defendants that alleged adverse actions before April 13, 2023 are outside the statute of limitations period for this claim, the Court will address Defendants' argument as it relates to Plaintiff's employment termination.

relationships" but "[i]rrefutable evidence disputes my employer's pretext for termination." (*Id.* at 6-7.) The SAC alleges that the suggestion that Plaintiff had performance issues was not supported by his employment records. (*Id.* at 5-6, ¶ 8(b) ("There were no performance indicators I was failing to meet."); at 6, ¶ 8(c) ("During my mid-year performance review, Jaime Cogley blind-sided me with negative comments. . .. The comments were refused by my boss in the final review."); at 20, ¶ 11(h) ("All signed performance reviews were fully successful with positive comments.").) The SAC alleges instances of how Plaintiff was treated differently than female employees in terms of how their complaints of alleged harassment were handled. (*Id.* at 3-5, ¶ 7.) Thus, in context and drawing all reasonable inferences in Plaintiff's favor, a rational trier of fact could find that there is no evidence of adverse performance to support Beres' assertion of performance deficiencies to support termination.

In sum, accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff's allegations that claims of performance deficiencies were false show a discriminatory animus against him based on his sex could plausibility state a claim for relief for gender discrimination. The Court thus denies the Motion as to the Title VII discrimination claim.

### F. Retaliation Claim

Defendants raise several arguments as to why Plaintiff fails to plausibly state a causal connection between any protected activity and his termination.[8] (ECF No. 36 at 12-14.) Plaintiff responds that he alleges numerous protected activities to establish a causal link between these activities and his employment termination. (ECF No. 40 at 13-14.) Plaintiff offers the allegations in ¶¶ 9(k) through 9(q) of the SAC as examples of

---

[8]To prevail on a retaliation claim, a plaintiff must first establish a *prima facie* case of retaliation by demonstrating: (1) the plaintiff engaged in a protected activity; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *See Dawson v. Entek*, 630 F.3d 928, 936 (9th Cir. 2011). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

protected activities. (*Id.*) The Court finds Plaintiff plausibly alleges that he engaged in a protected activity, including participating in an interview on June 27, 2023 where he "[p]rovided evidence of pervasive harassment."[9] (ECF No. 35 at 9.) Plaintiff alleges that his "employment was terminated after engaging in multiple acts of protected activities in the weeks prior. . . . Irrefutable evidence disputes my employer's pretext for termination." (*Id.* at 6-7.) Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff plausibly states that his complaint of alleged harassment was the "but for cause" of his employment termination. Accordingly, the Court denies Defendants' Motion as to the retaliation claim.

### G. Disability Discrimination Claim

Defendants argue that Plaintiff's ADA claim must be dismissed because the SAC's allegations show Robinson did not know about Plaintiff's alleged disability or that he requested accommodation before his termination.[10] (ECF No. 36 at 14-17.) Plaintiff responds that the SAC alleges that he disclosed the symptoms of his disability, citing the allegations that alleged harassment caused "severe anxiety and sleeplessness" and weight loss, Plaintiff expressed having to deal with "paranoia for weeks" and fear for his safety several times" (ECF Nos. 40 at 16-17, 35 at 11-12.) Defendants acknowledge that Plaintiff expressed these symptoms to Robinson's employees, but they contend these statements and symptoms were made to "express alleged injustices he perceived in the workplace, not a known mental impairment." (ECF No. 36 at 15-15.) Because the Court must draw all reasonable inferences in Plaintiff's favor, the Court finds that these

---

[9]The SAC also alleges other occasions where Plaintiff reported alleged harassment, including to Kami Williams, "HR rep" before April 13, 2023. (ECF No. 35 at 3-5.) Indeed, Defendants reference these prior complaints in their Motion. (ECF No. 36 at 3.) While the statute of limitations precludes claims based on adverse employment actions taken before April 13, 2023, Defendants offer no authority to support any contention that protected activities taken before this date cannot be considered. The Court need not resolve this issue because Plaintiff also alleges protected activity taken after April 13, 2023.

[10]The SAC alleges that Plaintiff was diagnosed with Generalized Anxiety Disorder "immediately after" his termination. (ECF No. 35 at 13.)

statements[11] could plausibly gave Robinson notice of Plaintiff's mental or physical impairment to trigger a duty to provide reasonable accommodation under the ADA.[12] Accordingly, the Court denies the Motion as to the ADA claim.

### H. FMLA Claim

Defendants argue Plaintiff did not request leave under the FMLA to plausibly state a claim for violation of the FMLA, citing to allegations that Defendants allegedly "interfered with his FMLA rights by terminating him mid-crisis." (ECF No. 36 at 17.) Plaintiff counters that he is not alleging denial of FMLA, he is alleging interference with his "FMLA rights when [he] gave them sufficient notice of a qualifying medical need and asked for leave." (ECF No. 40.) However, even accepting Plaintiff's allegations as true and construing all reasonable inferences in his favor, Plaintiff's allegations do not give Robinson sufficient notice of a qualifying medical condition and request for leave under the FMLA. The same statement that the Court referenced in finding a plausible claim under the ADA—that on July 25, 2023, Plaintiff told John Haynes he was "a bit of a nervous wreck right now. Might head to clinic."—does not give Robinson notice he had a qualifying medical condition and that he was seeking leave. (ECF No. 35 at 12.) Plaintiff alleges he was admitted to the hospital the next day on July 26, 2023, but he does not allege he informed Robinson that he could not get into the clinic as he alleged or that he was hospitalized. Accordingly, the Court agrees with Defendants that Plaintiff fails to state a plausible claim for relief under the FMLA and will grant the Motion as to this claim.

///

---

[11]For example, Plaintiff alleges that he sent a text on July 25, 2023 to John Haynes stating "I'm a bit of a nervous wreck right now. Might head to clinic. Just need a little time." (ECF No. 35 at 12.)

[12]"The ADA prohibits employers from discriminating against a disabled employee by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020) (citation omitted). "[A]n employer has a mandatory obligation 'to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations.'" *Id.* (citation omitted)

**I.    Intentional Infliction of Emotional Distress ("IIED" Claim)**

Defendants argue that the IIED claim must be dismissed under Nevada law because the allegations supporting this claim are the same as the allegations supporting Plaintiff's employment claims. (ECF No. 36 at 19-20.) The Court agrees.[13]

Under Nevada law, an IIED claim must be based on something more than "actions [such] as hiring and firing, project assignments, promotion and demotions, performance evaluations and other similar acts[.]" *Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011); *see also Robinson v. Renown Reg'l Med. Ctr.*, Case No. 3:16-cv-00372-MMD-WGC, 2017 WL 2945727, at *3 (D. Nev. July 10, 2017) (dismissing IIED claim because conduct upon which it was based fell under the category of "normal employment relations"). For instance, "termination of employees, even in the context of a discriminatory policy, does not in itself amount to extreme and outrageous conduct actionable under an intentional infliction of emotional distress theory." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). "Discriminatory employment practices are wrong and federal [and state] law makes such conduct unlawful and provides for relief; however, the tort of intentional infliction of emotional distress is not intended to reach every discrimination claim"—and it does not reach such claims here. *Id.* Here, Plaintiff refers to allegations supporting his retaliation claim in ¶ 13(g) and general allegations about disclosure of his disability under section 10 to support his IIED claim. (ECF No. 35 at 24-25.) Thus, Plaintiff's IIED claim does not allege conduct beyond the course of his employment. Accordingly, the Court grants the Motion as to the IIED claim.

**J.    Defamation Claim**

Defendants seek dismissal of Plaintiff's defamation claim on several grounds, including that the alleged statements are not actionable, are outside the statute of limitations, and are privileged. (ECF No. 36 at 21-23.) Liberally construed, the SAC appears to allege the following statements in support of this claim: Plaintiff's "poor

---

[13]The Court accordingly does not address Defendants' alternative arguments for dismissal of the IIED claim.

12

performance was listed as a reason for termination"; Mark Beres provided "false statements of fact concerning [Plaintiff's] experience . . . that were used to deny [him] the opportunity to review for a promotion." (ECF No. 35 at 25.)

"An action for defamation requires the plaintiff to prove four elements: '(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'" *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (citations omitted). "But in a defamation action, it is not the literal truth of each word or detail used in a statement which determines whether or not it is defamatory; rather, the determinative question is whether the gist or sting of the statement is true or false." *Id.* at 1224 (internal quotation marks and citation omitted); *see also Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 463 (Nev. 1993) ("words must be reviewed in their entirety and in context to determine whether they are susceptible of defamatory meaning."). Moreover, "[a] statement may be defamatory only if it contains a factual assertion that can be proven false." *Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1108, 1128 (D. Nev. 2014), *order clarified sub nom. Oracle USA, Inc. v. Rimini St., Inc.*, Case No. 210-CV-00106-LRH-PAL, 2014 WL 5285963 (D. Nev. Oct. 14, 2014). Whether a statement contains a false factual assertion is a question of law. *See id.*

The statute of limitations for defamation is two years. *See* NRS § 11.190(4)(c). While Plaintiff does not identify when Beres made statements about his experience that affected his opportunity for a promotion, Plaintiff alleges that he was denied the chance to interview for the Chief Geologist position in August 2022 and that Beres had "disclosed false reasons" as to why he would not be interviewed so the statements were presumably made in August 2022. (ECF No. 35 at 6.) Plaintiff initiated this action on January 27, 2025. (ECF No. 1.) Therefore, the Court agrees with Defendants that alleged statements relating to promotion opportunity in August 2022 are barred by the statute of limitations. (ECF No. 36 at 22.)

Defendants argue that other statements about Plaintiff's "poor performance" are subjective opinions and are not actionable. (*Id.*) The Court again agrees.

In sum, the Court agrees that Plaintiff fails to plausibly state a claim for defamation and will grant the Motion as to this claim.

### I.    Leave to Amend

Plaintiff asks the Court to give him leave to amend to cure any deficiencies. The Court has discretion to grant leave and should freely do so "when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)). The Court may deny leave to amend if: (1) it will cause undue delay; (2) it will cause undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

The Court denies leave to amend for two reasons. First, the Court finds amendment is futile based on the reasons the Court provided for dismissal. Second, Plaintiff had an opportunity to amend and his response to the Motion does not indicate how he may cure any deficiencies.

### IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

///

///

///

///

///

///

///

14

It is therefore ordered Defendants' motion to dismiss (ECF No. 36) is granted in part and denied in part. The Court grants the Motion as follows: (1) the alleged adverse employment action as to the discrimination and retaliation claims is limited to Plaintiff's employment termination; (2) the Court dismisses Title VII claims against Defendants Beres and Haynes; (3) the Court dismisses the FMLA, intentional infliction of emotional distress and defamation claims. The Court denies the Motion as to the remaining claims.

DATED THIS 3rd Day of February 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE